COMMONWEALTH of Pennsylvania

v.

Jeffery ALFORD, Appellant

Superior Court of Pennsylvania.

Submitted March 1, 2005.

Filed July 26, 2005.

Andrew M. Hladio, Public Defender, Beaver, for appellant.

Dale M. Fouse, Assistant District Attorney, Beaver, for Commonwealth, appellee.

Before: FORD ELLIOTT, MUSMANNO, and LALLY–GREEN, JJ.

OPINION BY FORD ELLIOTT, J.:

¶ 1 Jeffery Alford appeals from his judgment of sentence entered on February 25, 2004. For the following reasons, we affirm in part, reverse in part, and remand for resentencing.

¶ 2 On February 21, 2003, appellant was being transported to the Beaver County Jail by Constable Michael Hutchinson ("Hutchinson") when he escaped. Although he was wearing leg irons and handcuffs, appellant managed to take Hutchinson's .45 caliber semi-automatic handgun from its holster; and after pistol-whipping Hutchinson, appellant jumped a fence and fled to a nearby neighborhood. Appellant pounded on the front door of Bertha Gall ("Gall"), who, recognizing appellant's green and white striped uniform as that of a jail inmate, refused him entry. When appellant pointed Hutchinson's handgun at Gall through the front-door window and again demanded to be let in, Gall ran out the kitchen door to a neighbor's house. Appellant entered the open kitchen door and

was eventually apprehended by police, hiding beneath Gall's bed. Hutchinson's stolen handgun was recovered in Gall's basement.

¶ 3 After a jury trial, appellant was found guilty on December 12, 2003 of one count of simple assault, six counts of aggravated assault, one count of theft by unlawful taking, one count of burglary, two counts of robbery, one count of escape, and one count of criminal trespass. Appellant was found not guilty of one count of criminal attempt to commit homicide. On February 25, 2004, the Honorable John D. McBride imposed an aggregate sentence of 18 ½ to 67 years' incarceration. Appellant was also ordered to make restitution to Hutchinson in the amount of $1,111.59 and to Gall in the amount of $1,200.

¶ 4 Appellant filed a motion for reconsideration/modification of sentence, which was denied on August 3, 2004. A timely notice of appeal was filed on August 11, 2004. Appellant has complied with Pa.R.A.P. 1925(b).

¶ 5 Appellant brings the following issues for this court's review:

A. WHETHER THE CONVICTION AGAINST DEFENDANT SHOULD BE REVERSED REGARDING THE AGGRAVATED ASSAULT INVOLVING THE VICTIM GALL, WHEN IT WAS SHOWN THAT DEFENDANT MERELY POINTED THE GUN AT HER?

B. WHETHER THE IMPOSITION OF THE MANDATORY MINIMUM SENTENCE FOR THE ROBBERY CONVICTION SHOULD BE MODIFIED AND RECONSIDERED WHEN THE EVIDENCE SHOWED THAT THE DEFENDANT DID NOT VISIBLY POSSESS A FIREARM WHEN HE WAS ALLEGED TO HAVE COMMITTED A ROBBERY?

C. WHETHER THE IMPOSITION OF THE MANDATORY MINIMUM SENTENCE FOR THE BURGLARY CONVICTION SHOULD BE MODIFIED AND RECONSIDERED WHEN THE EVIDENCE SHOWED THAT WHEN THE DEFENDANT'S UNAUTHORIZED ENTRY OCCURRED, OR THE INTENT TO COMMIT A CRIME WHILE TRESPASSING, THEIR [SIC] WAS NO ONE PRESENT TO PLACE IN FEAR OF DEATH OR SERIOUS BODILY INJURY AS THE VICTIM HAD LEFT?

D. WHETHER THE DEFENDANT'S CONVICTION SHOULD BE REVERSED AS TO ROBBERY WHEN THE COMMONWEALTH FAILED TO SHOW THAT THE DEFENDANT COMMITTED FORCE AGAINST THE VICTIM IN THE COURSE OF COMMITTING A THEFT OF THE FIREARM?

E. WHETHER THE COMMONWEALTH FAILED TO MEET ALL ELEMENTS OF THE AGGRAVATED ASSAULT CHARGES FILED, AND THE DEFENDANT SHOULD ONLY BE CONVICTED OF LESSER AGGRAVATED ASSAULT CHARGES?

F. WHETHER THE COMMONWEALTH FAILED TO MEET ALL OF THE ELEMENTS OF THE BURGLARY CHARGE, AND THE DEFENDANT SHOULD ONLY BE CONVICTED OF THE CRIMINAL TRESPASS CHARGE?

Appellant's brief at 3.

¶ 6 First, appellant challenges the sufficiency of the evidence for his conviction for aggravated assault against Gall. Our standard of review for a challenge to the sufficiency of the evidence is well settled. We must view all the evidence in the light most favorable to the verdict winner, giving that party the benefit of

all reasonable inferences to be drawn therefrom. Additionally, it is not the role of an appellate court to weigh the evidence or to substitute our judgment for that of the fact-finder.

*Commonwealth v. Gruff,* 822 A.2d 773, 775 (Pa.Super.2003), *appeal denied,* 863 A.2d 1143 (2004) (citations omitted).

¶ 7 Aggravated assault is defined at 18 Pa.C.S.A. § 2702, which provides in relevant part:

(a) Offense defined.—A person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;

(2) attempts to cause or intentionally, knowingly or recklessly causes serious bodily injury to any of the officers, agents, employees or other persons enumerated in subsection (c) or to an employee of an agency, company or other entity engaged in public transportation, while in the performance of duty;

(3) attempts to cause or intentionally or knowingly causes bodily injury to any of the officers, agents, employees or other persons enumerated in subsection (c), in the performance of duty;

(4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon;

. . . .

(b) Grading.—Aggravated assault under subsection (a)(1) and (2) is a felony of the first degree. Aggravated assault under subsection (a)(3), (4), (5), (6) and (7) is a felony of the second degree.

18 Pa.C.S.A. § 2702(a), (b). A constable or deputy constable is among those offi-cers, agents, employees and other persons referred to in subsection (a). 18 Pa.C.S.A. § 2702(c)(24), (25). "Serious bodily injury" is defined as "Bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301.

¶ 8 The record reflects that after escaping from Hutchinson's vehicle, appellant approached Gall's house. Gall heard a loud bang on the front door. (Notes of testimony, 12/10/03 at 361.) Gall's front door has a window covered by a curtain. (*Id.* at 362.) Gall drew the curtain aside and saw appellant in a green and white uniform; she recognized the uniform as belonging to a jail inmate. (*Id.* at 362–363.) Appellant "kept yelling and pounding on the door to let him in." (*Id.* at 363.) Gall said, "I can't let you in." (*Id.*) Appellant started screaming, "Let me in." (*Id.*) After Gall told appellant, "I can't open the door," he pointed Hutchinson's handgun at her through the front door window. (*Id.* at 363, 365–366.) Gall immediately ran out of the house through the kitchen side door. (*Id.* at 363.) As she ran to a neighbor's house, police were in pursuit of appellant and were already setting up a perimeter around Gall's house. (*Id.* at 364.)

■ ¶ 9 Appellant argues that this evidence was insufficient to prove that he had the specific intent to cause serious bodily injury to Gall under Section 2702(a)(1) of the statute. We agree.

For aggravated assault purposes, an 'attempt' is found where the accused, with the required specific intent, acts in a manner which constitutes a substantial step toward perpetrating a serious bodily injury upon another. As our Court has previously stated: An intent is a subjective frame of mind, it is of necessity difficult of direct proof[.][W]e must

look to all the evidence to establish intent, including, but not limited to, appellant's conduct as it appeared to his eyes[.] Intent can be proven by direct or circumstantial evidence; it may be inferred from acts or conduct or from the attendant circumstances.

*Gruff, supra* at 776 (citations omitted).

¶ 10 In the instant case, appellant demanded to be let into Gall's house. After Gall repeatedly refused, appellant raised his handgun and pointed it at Gall, who immediately fled. This evidence is insufficient as a matter of law to prove aggravated assault under (a)(1). It is well settled that merely pointing a gun at another person in a threat to cause serious bodily injury does not constitute an aggravated assault. *Commonwealth v. Savage,* 275 Pa.Super. 96, 418 A.2d 629, 632 (1980).

¶ 11 In *Commonwealth v. Matthews,* 870 A.2d 924 (Pa.Super.2005) (*en banc*), this court re-examined the law of aggravated assault in Pennsylvania. In that case, Chaka Matthews shoved a loaded firearm into the throat of an unsuspecting motorist, continued to restrain the motorist throughout the encounter by pointing the loaded firearm at him, and expressed his present intent to kill between seven to ten times during their encounter. Matthews only ended the encounter after a third party arrived at the scene. We held that Matthews' repeated threats, when viewed together with his own actions, would permit the fact-finder to infer that Matthews possessed the requisite intent to inflict serious bodily injury during the encounter. *Id.* at 933, citing *Gruff, supra.* In so holding, we overruled *Commonwealth v. Mayo,* 272 Pa.Super. 115, 414 A.2d 696 (1979), and *Commonwealth v. Repko,* 817 A.2d 549 (Pa.Super.2003), to the extent that they stand for the proposition that the Commonwealth presented insufficient evidence of the defendant's intent, as a mat-

ter of law, where the defendant does not avail himself of an opportunity to follow through with his threats. *Id.*

¶ 12 The Commonwealth argues that appellant took a "substantial step" towards perpetrating a serious bodily injury upon Gall by showing up at her house, pounding on her front door and pointing the firearm at her. (Commonwealth's brief at 9.) The Commonwealth also argues that because appellant had just assaulted Hutchinson, the jury could properly infer that he also had the intent to harm Gall. (*Id.*) Although appellant's assault on Hutchinson and the circumstances of his escape are certainly relevant, we disagree that an intent to harm Hutchinson can somehow be transferred to Gall. Appellant pistol-whipped Hutchinson and pulled the trigger twice in an attempt to shoot him during his escape. There was nothing in appellant's words or conduct, other than the pointing of the gun, to indicate a specific intent to do bodily injury to Gall; as the Commonwealth states, "he pointed the gun *to gain entry to her residence* to hide himself from the police." (Commonwealth's brief at 8 (emphasis added).)

¶ 13 In the recent case of *Gruff, supra,* the appellant grabbed the victim from behind, and brought a loaded rifle equipped with a bayonet up toward him until the blade was touching the victim's neck. The appellant stated, "You're one of them, ain't you?" *Id.* at 774. After repeating this phrase one or two more times, the appellant added "I just ought to kill you . . . . Do you want to die today or tomorrow?" *Id.* The victim managed to escape and ran into the woods. The appellant made no attempt to hold onto the victim or fire a shot at him while he ran off.

¶ 14 The appellant argued that the evidence was insufficient to prove aggravated assault under (a)(1) and (a)(4). After a thorough review of prior case law on the

subject including *Mayo, supra,* a divided panel of this court disagreed, stating: "Appellant took a substantial step since the bayonet touched the victim's neck. The record also reflects an intent to seriously injure. Here, Appellant's words and conduct conveyed a present intent to kill." *Gruff, supra* at 780.

¶ 15 *Gruff* is distinguishable on its facts; appellant in this case never placed a weapon directly against Gall's face or throat, nor did he verbalize any explicit threats of bodily injury. Appellant simply demanded to be let into the house, and after Gall refused twice, he pointed his gun at her. *Matthews, supra,* is also distinguishable; there, the appellant pushed a revolver into the victim's throat and threatened to kill him repeatedly. Matthews eventually fled when a second passerby stopped at the scene. Here, other than pounding on the front door, screaming at Gall to "let me in," and pointing the firearm at her, there is nothing in appellant's words or conduct from which the jury could infer a specific intent to cause serious bodily injury. *Compare Commonwealth v. Bryant,* 282 Pa.Super. 600, 423 A.2d 407, 410–11 (1980) (insufficient evidence to sustain an aggravated assault conviction under 2702(a)(1) where the defendant held a victim at gunpoint, during a robbery, after uttering the conditional threat that if he did not "get some stuff out of this place ... (there would be) some dead honkies laying [sic] around"); *Commonwealth v. Robinson,* 817 A.2d 1153, 1160–61 (Pa.Super.2003) (finding insufficient evidence to demonstrate that the defendant intended to inflict serious bodily injury where the defendant struck the victim once in the back with a handgun during a robbery and where there was "no indication the blow was delivered for any purpose other than to assist in separating the backpack from [the victim's] clutches"). Appellant's words and actions in the instant case are in the nature of an implied conditional threat, *i.e., either* let me into the house *or* I may shoot you. Such a threat, conditioned on the victim's performance of some act, is insufficient to prove aggravated assault. *See Bryant, supra.* This is because the stated condition goes to the declarant's present intent at the time the threat is issued.

¶ 16 The Commonwealth argues that appellant's acts of approaching Gall's house, banging on the front door, and raising his firearm are "substantial steps" toward perpetrating a serious bodily injury on Gall. (Commonwealth's brief at 9.) We disagree with this analysis.

¶ 17 People rarely point guns at each other in a vacuum; it is important to note that the act of pointing a gun at someone will oftentimes be preceded by other events. Running to Gall's house after escaping Hutchinson's custody, pounding on her front door, and pointing a gun at her through the front door window after being denied entry was simply not enough to support the inference that aggravated assault was the true intention of appellant. Certainly appellant's actions were sufficient to prove simple assault under 18 Pa.C.S.A. § 2701(a)(3) (attempt by physical menace to put another in fear of imminent serious bodily injury), and appellant does not contest his conviction for simple assault.

¶ 18 The Commonwealth states that "In view of [appellant's] actions against the constable, it was quite likely that [appellant] would have inflicted serious bodily injury to Ms. Gall as well ...." (Commonwealth's brief at 9.) Such an argument relies on speculation and is unconvincing. In *Robinson, supra,* we rejected a logically similar argument where the Commonwealth conceded that the victim did not sustain serious bodily injury when she was

struck in the back with the handgun, but nevertheless argued that she *could have* sustained such injury as a result of the defendant's actions:

> Although circumstances might indeed preponderate sufficiently to allow the factfinder to infer that a party acted with intent to inflict serious bodily injury, the necessity of proving a case by circumstantial evidence does not coincide with a suspension of the operable burden of proof. In other words, the Commonwealth's reliance upon circumstantial evidence is not a license for the jury or factfinder to speculate and convict upon hunches.

*Id.* at 1159. "The Commonwealth seeks to impose criminal liability upon Appellant, not for what happened, or even for what the assailant intended to have happen, but for what could possibly have happened in the worse case scenario." *Id.* While appellant's prior assault on Hutchinson during his escape was relevant and admissible, whether or not appellant had also attempted to inflict serious bodily injury on Gall could not be proved by his prior conduct. "The trier of fact cannot base a conviction on conjecture and speculation and a verdict which is premised on suspicion will fall even under the limited scrutiny of appellate review." *Id.* at 1158 (citation omitted).

¶ 19 For the foregoing reasons, we will vacate the judgment of sentence for appellant's conviction of aggravated assault against Gall on the basis of evidentiary insufficiency. However, appellant was also found guilty of simple assault, a charge for which he was not sentenced; as the trial court's sentencing scheme has been disturbed by this ruling, we will *remand* for resentencing on the simple assault.

¶ 20 We now address appellant's second assignment of error. Appellant argues that the trial court erred in sentencing him to a mandatory minimum sentence for robbery under 42 P.S. § 9712(a).

¶ 21 Appellant was sentenced under Pennsylvania's mandatory minimum sentencing statute for his robbery of Hutchinson, which states in relevant part:

> Mandatory sentence.—Except as provided under section 9716 (relating to two or more mandatory minimum sentences applicable), any person who is convicted in any court of this Commonwealth of a crime of violence as defined in section 9714(g) (relating to sentences for second and subsequent offenses), shall, if the person visibly possessed a firearm or a replica of a firearm, whether or not the firearm or replica was loaded or functional, that placed the victim in reasonable fear of death or serious bodily injury, during the commission of the offense, be sentenced to a minimum sentence of at least five years of total confinement notwithstanding any other provision of this title or other statute to the contrary. Such persons shall not be eligible for parole, probation, work release or furlough.

42 P.S. § 9712(a).

¶ 22 Robbery is an enumerated offense under Section 9714(g).

> 42 Pa.C.S. Section 9712(a) requires a person convicted of a crime of violence be given a minimum sentence of at least five years, if the person visibly possessed a firearm that placed the victim in reasonable fear of death or serious bodily injury during the offense. Section 9712 applies when possession 'manifests itself in the process of the crime.'

*Commonwealth v. Townsend,* 747 A.2d 376, 379 (Pa.Super.2000), *appeal denied,* 563 Pa. 661, 759 A.2d 385 (2000), quoting *Commonwealth v. Healey,* 343 Pa.Super. 323, 494 A.2d 869, 870 (1985). " 'Visible possession' means the gun was seen by or

had a visible effect on the victim." *Id.,* citing *Healey, supra.*

¶ 23 Appellant was charged with robbery for removing Hutchinson's handgun from its holster. There was nothing else taken. Appellant argues that at the point he removed Hutchinson's firearm, the theft was complete. Although there was a subsequent struggle and appellant beat Hutchinson with the firearm, appellant did not use the firearm to take anything else from Hutchinson. Therefore, appellant argues, the firearm was not used "during the commission of" a robbery. The trial court and the Commonwealth can cite no case law, and indeed our research reveals none, where a defendant was sentenced under Section 9712(a) for robbing a victim of nothing but his own firearm.

¶ 24 The Commonwealth and the trial court rely on *Commonwealth v. Walker,* 386 Pa.Super. 100, 562 A.2d 373 (1989), *appeal denied,* 525 Pa. 618, 577 A.2d 889 (1990). In *Walker,* the victim, a retired police officer, agreed to give the appellant a ride. The victim was armed. When he dropped off the appellant, a voice outside his car said "Don't move . . . or I'll blow your brains out!" *Id.* at 374. It was too dark for the victim to see who had yelled. After handing over money from one of his pockets, the appellant said, "He's got more f[___] money than that," and "He's got a gun." *Id.* The appellant took the victim's gun and gave it to her accomplice. The victim was ordered out of the car, at which point the perpetrators took the rest of the money from his pockets. As they fled, the appellant's accomplice turned and fired a shot at the victim.

¶ 25 The appellant was sentenced to a mandatory minimum sentence under Section 9712(a). This court rejected her argument that the gun taken from the victim was not used to accomplish the robbery but was simply "proceeds" from the robbery. We stated, "This is without merit because [the victim's] testimony was unequivocal that *after* his gun was taken by appellant, her cohort put the gun in [the victim's] face and ordered him out of the car so they could take the rest of the money out of his pockets." *Id.* (emphasis added).

■ ¶ 26 *Walker* is clearly distinguishable on its facts. There, the appellant and her accomplices continued to rob the victim *after* they had possession of the firearm. Nonetheless, we find that the trial court did not err in imposing the mandatory minimum sentence under Section 9712. The robbery statute provides that an act is deemed "in the course of committing a theft" if it occurs in flight after the attempt or commission. *Commonwealth v. Maldonado,* 343 Pa.Super. 154, 494 A.2d 402, 409 (1985), *appeal denied* (Dec. 10, 1985), citing 18 Pa.C.S.A. 3701(a)(2). "Under 18 Pa.C.S. § 3701(a)(2), 'in the course of committing a theft' is unusual only insofar as it makes classification of robbery depend in part on behavior after the theft might be said to be accomplished." *Id.* at 408 (comparing Pennsylvania's modern robbery statute with the Model Penal Code).

¶ 27 After pulling Hutchinson's firearm from its holster, appellant pistol-whipped him and twice pulled the trigger with the muzzle of the firearm pressed against Hutchinson's side.[1] After exiting the vehicle, appellant also pointed the firearm in the direction of Tom Wilson ("Wilson"), a passing truck driver who had stopped at the scene. (Notes of testimony, 12/9/03 at

---

**1.** Although the gun was loaded, there was no round in the chamber. (Notes of testimony, 12/9/03 at 158, 170.)

248.) Therefore, appellant used the firearm "in the course of committing a theft" to facilitate his escape and complete the crime. Necessarily, then, appellant visibly possessed a firearm that "manifested itself in the process of the crime" and Section 9712 applied. Appellant cannot contend that Hutchinson and Wilson were not placed in reasonable fear of death or serious bodily injury during the commission of the offense. In addition, our holding affirms the Legislature's clear purpose in enacting Section 9712 of preventing and punishing gun-related violence. We affirm this aspect of appellant's sentence.

■■■ ¶ 28 Next, appellant argues that Section 9712 was also inapplicable to his burglary conviction, because Gall had already left the house when he entered. The trial court states that appellant visibly possessed the firearm at the time he attempted to gain entry to Gall's home, therefore placing her in reasonable fear of death or serious bodily injury during the commission of the offense. We agree with the trial court and find no error.

¶ 29 Burglary is defined by 18 Pa.C.S.A. § 3502: "A person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with intent to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter." 18 Pa. C.S.A. § 3502(a).

¶ 30 The crime of burglary is one of the enumerated offenses at Section 9714(g). Section 9712(a) applies to "burglary of a structure adapted for overnight accommodation *in which at the time of the offense any person is present.*" (emphasis added). Although Gall was not present at the time of appellant's actual entry into her home, appellant does not cite any case in support of his argument that the mandatory sentencing provisions of Section 9712 are in-

applicable under these circumstances. As the Commonwealth argues, the only reason Gall was not present when appellant gained entry through the open side door was because appellant had threatened her with a firearm. (Commonwealth's brief at 10–11.) In fact, appellant was only able to access the house after Gall fled in fear. This was sufficient for the trial court to find that appellant used a firearm "during the commission of the offense" of burglary in which a person was present.

■■■ ¶ 31 Next, appellant challenges the sufficiency of the evidence for his robbery convictions. Specifically, appellant argues that the Commonwealth failed to prove he removed Hutchinson's firearm by force; or that in the course of committing a theft, he threatened Hutchinson with or intentionally put him in fear of immediate serious bodily injury. As previously discussed in the context of the mandatory sentencing statute, appellant argues that when he pulled Hutchinson between the seats of the car and beat him, the theft had already been completed. We disagree.

¶ 32 Robbery is defined in 18 Pa.C.S.A. § 3701:

(a) Offense defined.—

(1) A person is guilty of robbery if, in the course of committing a theft, he:

(i) inflicts serious bodily injury upon another;

(ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury;

(iii) commits or threatens immediately to commit any felony of the first or second degree;

(iv) inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury; or

(v) physically takes or removes property from the person of another by force however slight.

(2) An act shall be deemed 'in the course of committing a theft' if it occurs in an attempt to commit theft or in flight after the attempt or commission.

(b) Grading.—Robbery under subsection (a)(1)(iv) is a felony of the second degree; robbery under subsection (a)(1)(v) is a felony of the third degree; otherwise, it is a felony of the first degree.

18 Pa.C.S.A. § 3701(a), (b).

¶ 33 Appellant's robbery conviction was premised on the crime of theft by unlawful taking. "A person commits the crime of 'theft by unlawful taking' if he unlawfully takes the movable property of another with intent to deprive him thereof." *Commonwealth v. Hopkins*, 747 A.2d 910, 914 (Pa.Super.2000), citing 18 Pa.C.S.A. § 3921(a); *Commonwealth v. Stevens*, 237 Pa.Super. 457, 352 A.2d 509, 513 (1975) (theft is a lesser included offense of robbery).

■■■■ ¶ 34 Appellant was convicted of two counts of robbery under 3701(a)(1)(ii) and (a)(1)(iv). (Trial court opinion, 9/22/04 at 2.) The criminal information and the jury's verdict reflect that appellant was not charged under (a)(v); therefore, we need not address his argument that Hutchinson's firearm was not taken by force.

[T]he Commonwealth need not prove a verbal utterance or threat to sustain a conviction under subsection 3701(a)(1)(ii). It is sufficient if the evidence demonstrates aggressive actions that threatened the victim's safety. For the purposes of subsection 3701(a)(1)(ii), the proper focus is on the nature of the threat posed by an assailant and whether he reasonably placed a victim in fear of "immediate serious bodily injury."

The threat posed by the appearance of a firearm is calculated to inflict fear of deadly injury, not merely fear of "serious bodily injury." A factfinder is entitled to infer that a victim was in mortal fear when a defendant visibly brandished a firearm.

*Hopkins, supra* at 914–915 (citations omitted).

¶ 35 Hutchinson testified that as he approached a stop sign, he felt appellant take hold of his weapon. (Notes of testimony, 12/9/03 at 188.) The weapon was on Hutchinson's right side in a holster. (*Id.* at 174.) After appellant grabbed Hutchinson's firearm, Hutchinson felt the vehicle shaking. (*Id.* at 188.) The car was still in motion while Hutchinson felt his .45 caliber handgun being pulled from its holster. (*Id.* at 189.) As he reached back towards appellant with his right hand, Hutchinson was pulled between the seats. (*Id.*) The vehicle, without a driver at the wheel, crashed into the Jersey barrier. (*Id.* at 190.) Appellant was on top of Hutchinson, beating him about the face. (*Id.* at 191.) Appellant also tried to fire the weapon twice into Hutchinson's side. (*Id.* at 195.)

¶ 36 Although appellant did not threaten to inflict serious bodily injury on Hutchinson until *after* he had removed the firearm, the evidence was sufficient for the jury to convict appellant under Section 3701(a)(1)(ii). Appellant need not have verbalized any threats; his actions were sufficient to place Hutchinson in fear of immediate serious bodily injury. *Hopkins, supra.* Appellant was also properly convicted under (a)(1)(iv). As discussed at length *supra*, we find no merit to appellant's argument that at the moment he removed Hutchinson's firearm from its holster, the theft had been completed and was separable from his subsequent actions. Hutchinson's injuries occurred moments

after appellant's theft of the firearm, and in the course of appellant's attempt to escape the constable's custody. *See Commonwealth v. Steward,* 762 A.2d 721, 724 (Pa.Super.2000), *appeal denied,* 566 Pa. 662, 782 A.2d 545 (2001) ("The law is clear that an injurious act satisfies the 'in the course of' requirement if [it] is accomplished 'in flight after the . . . commission' of a theft. Appellant's infliction of bodily injury upon [the victim], committed as it was moments after the theft and during his flight and apprehension, satisfies the requirement that the act was committed in the course of the theft.") (citations omitted). *See also Maldonado, supra.*

▓ ¶ 37 Next, appellant argues that the evidence was insufficient to find him guilty of aggravated assault under 18 Pa. C.S.A. § 2702(a)(1), only (a)(3) or (a)(4). A conviction under (a)(1) is a felony of the first degree; (a)(3) and (a)(4) are second degree felonies. We agree with the trial court that the evidence was sufficient for the jury to find appellant guilty of aggravated assault under (a)(1).

¶ 38 Hutchinson testified appellant hit him six or eight times in the head and face with the firearm. (Notes of testimony, 12/9/03 at 191.) He testified "There was just blood all over the place." (*Id.*) Appellant struck Hutchinson in the temple with the muzzle and side of the handgun. (*Id.* at 192.) Hutchinson was also struck on the top of his head, and just above his eye. (*Id.* at 193.) Hutchinson thought his nose might have been broken. (*Id.* at 196.) After appellant exited the vehicle, Hutchinson managed to crawl out onto the street, where he saw the truck driver, Wilson. (*Id.* at 199.) Wilson testified that Hutchinson "had blood on him all over the place." (*Id.* at 256.) In addition to the pistol-whipping, appellant tried to shoot Hutchinson twice. (*Id.* at 195.) Hutchinson told Wilson at the scene, "Thank God

there was nothing locked in," meaning there was no round in the chamber. (*Id.* at 257.) This evidence was sufficient for appellant's conviction of aggravated assault as a first-degree felony under (a)(1).

▓ ¶ 39 Finally, appellant argues that the evidence was insufficient for his conviction of burglary. Appellant acknowledges the sufficiency of the evidence for his convictions of simple assault and criminal trespass as to Gall, but states that the Commonwealth failed to prove he intended to commit a crime within Gall's home, which is an essential element of burglary.

¶ 40 We agree with the trial court that while the Commonwealth is not required to prove what specific crime appellant intended to commit, clearly appellant entered Gall's home with the intent to escape from custody, a crime of which he was also convicted. After Gall fled out the side kitchen door, appellant entered and hid himself beneath Gall's bed. He went to Gall's house just minutes after escaping Hutchinson's custody. Appellant was still dressed in jail garb and wearing handcuffs and shackles. This evidence was sufficient to prove that appellant entered Gall's house with the intent to commit the crime of escape.

¶ 41 Judgment of sentence affirmed in part and reversed in part. Remanded for resentencing consistent with this Opinion. Jurisdiction relinquished.