21 A.3d 1272 (2011)
2011 PA Super 108
COMMONWEALTH of Pennsylvania, Appellant
v.
William R. LANDIS, Jr., Appellee.
Nos. 826 MDA 2010, 1381 MDA 2010.
Superior Court of Pennsylvania.
Argued March 22, 2011.
Filed May 20, 2011.
*1273 Jonathan H. Kurland, Assistant District Attorney, Reading, for Commonwealth, appellant.
Carson Morris, Philadelphia, for appellee.
BEFORE: BENDER, DONOHUE and OTT, JJ.
OPINION BY DONOHUE, J.:
The Commonwealth of Pennsylvania ("the Commonwealth") appeals from two pretrial orders entered by the Court of Common Pleas, Berks County, regarding criminal defendant William R. Landis, Jr. ("Landis").[1] After careful review, we affirm.
The trial court summarized the facts of the case as follows:
At approximately 9:20 p.m. Berks County Radio dispatched the Spring Township police to a residence for a possible shooting. Officer Eric Goss responded to the call. [Landis'] wife was found dead on the second floor of the residence from a gunshot wound to the head. While performing a clearing operation of the residence, Officer Goss discovered [Landis] in the basement with a knife in his hand. Officer Goss heard [Landis] make telephone calls.
Detective [Stephen] Brock of the Spring Township Police Department also responded to the call. Detective Brock made contact with [Landis] while he remained barricaded in the basement. [Landis] was holding a gun to the right side of his head and a knife to his chest the first time that Detective Brock saw [Landis]. [Landis] later informed Detective Brock that he loved his wife and could not live with himself for hurting her. [Landis] had stated to the detective that he had not wanted to hurt anybody else, but he would shoot anybody who came down the stairs. Detective Brock talked with [Landis] throughout the night. The topics of the discussions ranged from the shooting to [Landis'] family, medicine, and business. Detective Brock further testified that [Landis] had become more tired and intoxicated as the evening progressed. [Landis] had been drinking wine throughout the night.
Eventually the Berks County Emergency Response Team (BCERT) was called in due to the report of a barricaded gunman. Officer Matthew [Beighley], an assistant team leader for BCERT, positioned himself around the area at the top of the stairway to the basement. He covered the bottom of the stairwell with his rifle. He could hear [Landis] talking in the basement.

*1274 The commanding officer directed BCERT to attempt to take [Landis] into custody using less-lethal means if [Landis] presented himself unarmed at the bottom of the stairs. Around 2:00 a.m. negotiators talked to [Landis] and got [Landis] to stand at the bottom of the stairs. No weapons were visible. The officers were prepared to employ a 40-millimeter grenade launcher that shot sponge foam rounds and a Taser against [Landis]. Officer [Beighley] was responsible for the Taser. Detective Keener, the person responsible for the grenade launcher, was positioned immediately to the left of Officer [Beighley]. Officer [Beighley] proceeded down the steps first so the Taser probes would not get crossed. The two probes need to make contact with the person who is being shot in order to work. The plan was to deploy the two weapons simultaneously to incapacitate [Landis] at the bottom of the stairs and then take him into custody before he had a chance to recover.
The round of sponges struck [Landis] in the abdomen. Officer [Beighley] fired the Taser at the same time, but only one probe hit [Landis]. [Landis] crumbled over from the impact to his abdomen from the sponges. [Landis] fell backward into the wall and then began moving forward as Officer [Beighley] was coming down the stairs. Officer [Beighley] saw [Landis] pick up a gun and bring it up as the officers were coming down the stairs. Officer [Beighley] saw the gun pointed towards him. [Landis] ran towards the back of the room. Officer [Beighley] immediately yelled out that [Landis] had a gun and pushed everybody back up the steps. Officer [Beighley] had advanced past the open wall of the stairs when he heard a gunshot. Officer [Beighley] testified that everything had happened in a matter of seconds.
The officers were running up the stairs towards the south. The shot that was fired landed in a photograph hanging on the north wall at the bottom of the stairs.
Trial Court Opinion, 7/27/10, at 2-4.
A preliminary hearing was held on December 10, 2009, at which the aforementioned testimony was provided. The magistrate bound all charges over for trial.[2] Landis filed an omnibus pretrial motion requesting ongoing discovery, the Commonwealth's witness list, a writ of habeas corpus on the charges of murder in the first degree and assault on a law enforcement officer, suppression of evidence, and severance of the charges relating to the murder of Landis' wife from the charges relating to the assault on police officers who attempted to take him into custody for his wife's murder. Relevant to the appeal before us, the trial court granted Landis' request for severance and issued a writ of habeas corpus on the charge of assault of a law enforcement officer. The Commonwealth filed this timely appeal of the issuance of the writ.
Because severance was granted, the trial court retained jurisdiction over the murder case. On April 23, 2010, the Commonwealth filed a motion in limine requesting *1275 permission to present the following evidence at the murder trial:
[1] [Landis] stated to Officer Eric Goss of the Spring Township Police Department (STPD), `Do not come down [to the basement] or I'll kill you.' The evidence will show that this statement was made in the context of when [Landis] first encountered law enforcement and within approximately one hour after he had allegedly murdered Sharon Landis. This encounter initiated a continuous and uninterrupted standoff between [Landis] and law enforcement, who were attempting to take him safely into custody. The evidence will show that the standoff lasted approximately eight hours.
[2] During the standoff, it is alleged [Landis] pointed a loaded firearm at Detective Stephen Brock of the STPD in an effort to put him in fear of serious bodily injury and when Det. Brock was investigating and attempting to take [Landis] into custody for the murder of Sharon Landis.
[3] During the standoff, it is alleged [Landis] repeatedly made statements to Det. Brock in the nature of: `Don't come down here. Don't send anybody down here or I'll shoot them.'
[4] During the standoff, it is alleged [Landis] discharged a firearm in an attempt to shoot and injure Officer Mathew Beighley, who, while acting in his capacity of a member of the Berks County Certified Emergency Response Team (BCERT), was attempting to take [Landis] into custody for the murder of Sharon Landis.
[5] In his attempt to shoot Ofc. Beighley, it is alleged [Landis] recklessly placed nine other members of the BCERT unit in danger of death or seriously bodily injury.
[6] At the time of this writing, it is believed and averred that the firearm that [Landis] used to murder Sharon Landis is the same firearm that was used to shoot at Ofc. Beighley. [Landis] was in control of the firearm throughout the standoff and when he was taken into custody at the end of the standoff.
Commonwealth's Motion In Limine, 5/13/10, at ¶ 8.
The trial court granted the Commonwealth's motion with respect to the first three requests; it denied the fourth request based on a lack of evidence that Landis did, in fact, attempt to shoot Officer Beighley; it denied the fifth request "as a legal conclusion for the jury"; and it modified the sixth request "to allow evidence that the firearm that [Landis] used to murder Sharon Landis was the same firearm that was fired as Officer Beighley retreated if the evidence permitted it." Trial Court Opinion, 10/20/10, at 2. The Commonwealth filed a timely appeal from the trial court's order.
On September 17, 2010, the two cases were consolidated before this Court at the Commonwealth's request. On appeal, the Commonwealth presents the following issues for our review:
A. Did the [l]ower [c]ourt commit error in granting [Landis'] request for habeas corpus relief on the charge of [a]ssault of [l]aw [e]nforcement [o]fficer when the evidence, viewed in the light most favorable to the Commonwealth, made a prima facie showing for every element of that charge?
B. Did the [t]rial [c]ourt abuse its discretion in prohibiting the Commonwealth from introducing evidence in [Landis'] murder trial that [Landis] shot at a police officer trying to take him into *1276 custody for that murder where such evidence is probative of [Landis'] familiarity with firearms and his consciousness of guilt for the murder?
Commonwealth's Brief at 6.
We begin by addressing the first issue raised on appeal. In its written opinion, the trial court states that it granted Landis' petition for writ of habeas corpus on the basis that the Commonwealth failed to present prima facie evidence that Landis possessed the requisite mens rea for assault of a law enforcement officer. Trial Court Opinion, 7/27/10, at 5-6. The Commonwealth asserts that this was error, as the trial court failed to view the evidence presented at the preliminary hearing in the light most favorable to the Commonwealth in coming to this conclusion. Commonwealth's Brief at 11.
In addressing an appeal from a decision granting a defendant's petition for a writ of habeas corpus, this Court is limited to determining whether a prima facie case was established. Commonwealth v. Hendricks, 927 A.2d 289, 290 (Pa.Super.2007). We may reverse a trial court's decision only upon a showing that the trial court has committed "a manifest abuse of discretion." Id. When deciding whether the Commonwealth presented a prima facie case, we view all evidence presented, and reasonable inferences drawn therefrom, in the light most favorable to the Commonwealth. Commonwealth v. Patrick, 933 A.2d 1043, 1045 (Pa.Super.2007) (en banc).
Assault on a law enforcement officer is defined as an "attempt[] to cause or intentionally or knowingly caus[ing] bodily injury to a law enforcement officer, while in the performance of duty and with knowledge that the victim is a law enforcement officer, by discharging a firearm." 18 Pa. C.S.A. § 2702.1(a). Thus, the Commonwealth is required to prove that the defendant (1) attempted to cause or intentionally or knowingly caused bodily injury (2) to a law enforcement officer (3) in the performance of his or her duty (4) by discharging a firearm and (5) the defendant knew the victim was a law enforcement officer. "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S.A. § 901(a).
The statute was enacted in 2008, and at the time of this writing, there are no appellate cases interpreting the statute. In the case before us, the only element at issue is Landis' mens rea in discharging the firearmwhether the Commonwealth presented prima facie evidence that, in discharging the firearm, Landis specifically intended to cause Officer Beighley bodily injury. The mens rea requirement set forth in section 2702.1(a) is identical, in relevant part, to several subsections of the aggravated assault statute.[3]See 18 Pa. *1277 C.S.A. § 2702(a)(1)-(5); Commonwealth v. Matthew, 589 Pa. 487, 491, 909 A.2d 1254, 1257 (2006) (indicating that where a conviction for aggravated assault is the result of an attempt, the Commonwealth is required to prove specific intent). As such, we find cases relating to aggravated assault to be instructive.
To determine whether a defendant intended to commit bodily injury under section 2702, our Supreme Court has held that we must examine the totality of the circumstances surrounding the incident. Commonwealth v. Alexander, 477 Pa. 190, 194, 383 A.2d 887, 889 (1978); see also Commonwealth v. Matthew, 589 Pa. 487, 494, 909 A.2d 1254, 1258 (2006) (reaffirming the totality of the circumstances test pronounced in Alexander). We look at both direct and circumstantial evidence, including the defendant's conduct at the time of the incident, in determining whether the defendant possessed the requisite intent. Commonwealth v. Alford, 880 A.2d 666, 670-71 (Pa.Super.2005).
In finding that the Commonwealth failed to satisfy its burden of proof, the trial court found the following:
Throughout the long evening [Landis] threatened to hurt himself or shoot anyone who tried to descend the stairs. He had several opportunities to attempt to shoot different police officials who stood at the top of the stairs. He did not try to shoot anyone. Instead, he engaged in conversations with them concerning various issues.
After [Landis] was hit with sponges, he grabbed a gun and retreated away from the police. He did not advance toward the BCERT team. Thus, while the police officers were in his presence, [Landis] did not threaten to shoot them or discharge his gun. When Officer [Beighley] saw [Landis] pick up the gun, the officers immediately retreated up the stairs. Officer [Beighley] was the last officer up the stairs. He was past the open stairs when [Landis] discharged his gun. [...] The discharge of the gun was in the opposite direction to where the police had retreated. [Landis] did not attempt to shoot an officer.
Trial Court Opinion, 7/27/10, at 5-6.
We have thoroughly reviewed the record, including the transcript of the preliminary hearing and the photographs admitted into evidence by the Commonwealth, and conclude that the record supports the trial court's determination. The record reflects that Officer Goss testified that Landis told him not to come downstairs or he would kill him. N.T., 12/10/09, at 46. Officer Goss subsequently began descending the stairs to the basement, and observed Landis downstairs holding what the officer believed to be a knife. Id. at 50-51; Commonwealth Exhibit 4. Officer Goss stood there looking at Landis for approximately 30 seconds, during which Landis made no threats to the officer and did not make a move to harm him. N.T., 12/10/09, at 61, 64.
*1278 Detective Brock testified that he was at the top of the stairs with Officer Goss and spoke with Landis at length. Id. at 120. During their conversation, Landis likewise threatened to shoot anyone who came downstairs. Id. at 87, 91. Landis came to the bottom of the stairs multiple times, giving him ample opportunities to shoot the police officers present. Id. at 89-90, 95, 97. Although Landis pointed his gun at Detective Brock, he took no action to harm anyone. Id. Indeed, at one point Detective Brock indicated that Landis said: "I don't want to hurt anybody else. I just want to hurt myself, but if you send anybody down the stepsjust don't send anybody down the steps or I'll shoot them, but I don't want to hurt anybody." Id. at 118.
Officer Beighley testified regarding the actual shot that occurred. He testified that as he came downstairs after he shot Landis with the taser, he saw Landis pick up a gun that was located near the bottom of the stairs. Id. at 146-47; Commonwealth's Exhibit 7. Officer Beighley immediately began retreating back upstairs with the other officers in front of him. N.T., 12/10/09, at 147. He testified that he saw Landis bringing the gun up in the direction of the officers, but that Landis was running away from the officers, towards the back of the room. Id. at 149. After Officer Beighley was almost all the way upstairs and was out of view from the basement, he heard a single gunshot. Id. at 152-53; Commonwealth Exhibit 4. He did not see where Landis was aiming when he shot the gun. N.T., 12/10/09, at 160. The bullet struck a wall adjacent to where Officer Beighley had been when he was coming down the stairs, in the opposite direction of the officers' retreat. Id. at 157-58; Commonwealth Exhibit 8.
The Commonwealth points to several cases wherein a conviction for aggravated assault was upheld based upon what it asserts was similar or lesser evidence. The Commonwealth argues that these cases therefore compel this Court to overturn the trial court's grant of habeas corpus. We find, however, that all of the cases relied upon by the Commonwealth are readily distinguishable from the case at bar, and thus give us no authority to provide the requested relief.
The Commonwealth cites to Commonwealth v. Fluharty, 429 Pa.Super. 213, 632 A.2d 312 (1993), for the proposition that a defendant's failure to fire a gunshot at a police officer still permits a finding of aggravated assault. Commonwealth's Brief at 15. Fluharty involved a defendant who pled guilty to aggravated assault (and other crimes) in exchange for a favorable sentence. Fluharty, 632 A.2d at 318. He subsequently wished to withdraw his plea alleging, in relevant part, an insufficient factual basis for the guilty plea. Specifically, he stated that he did not intend to hurt the police officer when he drew his gun, and thus his guilty plea for aggravated assault was not valid. Id. at 317-18. The trial court denied his request to withdraw his plea, and this Court affirmed, as the totality of the circumstances provided sufficient evidence from which a jury could have concluded the defendant intended to cause the officer bodily injury: "In response to his commands that appellant halt and put his hands up, appellant turned to face the officer, drew a loaded gun and pointed it directly at the officer. It was only when the officer fired first that appellant dropped his gun and continued to flee. [...] This was confirmed by his subsequent fight with [the officer] who was attempting to place him under arrest." Id. at 318.
This is far more evidence of the defendant's intent than we have in the case sub judice. Although Landis pointed a gun at the officers, that alone is insufficient to *1279 prove his intent to cause the officers bodily injury. See Commonwealth v. Savage, 275 Pa.Super. 96, 418 A.2d 629, 632 (1980). To the contrary, the record reveals that despite having the several opportunities to shoot at police officers, Landis did not do so, which belies a finding that he intended to injure the officers. See Commonwealth v. Robinson, 817 A.2d 1153, 1161 (Pa.Super.2003).
The Commonwealth further relies on Commonwealth v. Hall, 574 Pa. 233, 830 A.2d 537 (2003), for the proposition that a gunshot fired by a defendant that misses a police officer can be sufficient to sustain a conviction for aggravated assault. Commonwealth's Brief at 15-16. In Hall, the officer testified "in no uncertain terms" that the defendant pointed the gun at him when he fired the gun"not up in the air, or off to the side, or at himself." Hall, 574 Pa. at 243, 830 A.2d at 543. In affirming the defendant's conviction for aggravated assault, our Supreme Court emphasized the importance of this testimony: "A gun is a lethal weapon; pointing it toward a person, and then discharging it, speaks volumes as to one's intention." Id.
As stated supra, this is not the situation with which we are faced in the case at bar. At the preliminary hearing, Officer Beighley testified that he did not know where Landis was aiming when he fired the gun, as he had already made it up the stairs by the time Landis fired the gun, striking the wall at the bottom of the stairs in the opposite direction of Officer Beighley. N.T., 12/10/09, at 157-58, 160; Commonwealth's Exhibit 4, 8.
The Commonwealth also relies on the case of Commonwealth v. Stevenson, 894 A.2d 759 (Pa.Super.2006), to show that threats of harm coupled with actions evincing an intent to harm constitutes aggravated assault. Commonwealth's Brief at 16. In Stevenson, this Court upheld a conviction for aggravated assault where the defendant, during a struggle with the police, "mule-kicked" a police officer and tried to reach into his pocket to obtain a loaded handgun. Stevenson, 894 A.2d at 774. After his arrest, the defendant told police they were "lucky" he did not reach his gun. Id. This Court found the totality of the circumstances gave rise to a finding that the defendant intended to cause serious bodily injury to the police officers, based upon his actions and words. Id.
Although the record reflects that Landis threatened to shoot the police, these were "conditional threats" as set forth in Commonwealth v. Alford. Alford, 880 A.2d at 672. In Alford, this Court held that "[s]uch a threat, conditioned on the victim's performance of some act, is insufficient to prove aggravated assault." Id. The record in the instant case reflects that Landis' threats to shoot the police officers were conditioned upon them coming downstairseither you stay upstairs, or I may shoot you. N.T., 12/10/09, at 46, 87, 91.
Based upon our review of the totality of the circumstances surrounding the incident, we discern no abuse of discretion in the trial court's finding that the Commonwealth failed to present sufficient evidence that Landis possessed the necessary mens rea for assault of a law enforcement officer. We disagree that the trial court failed to employ the appropriate standard of review. We therefore have no basis to overturn the trial court's decision.
Turning to the second issue raised on appeal, the Commonwealth argues that the trial court erred by excluding evidence that Landis "shot at" Officer Beighley.[4] *1280 The Commonwealth recognizes, however, that the determination of this issue is entirely dependent upon our resolution of its first issue. Commonwealth's Brief at 20. Based on our conclusion that the trial court did not abuse its discretion by granting habeas corpus relief for the charge of assault of a law enforcement officer, we find that the trial court did not abuse its discretion by excluding testimony that Landis "shot at" Officer Beighley.
Orders affirmed.
OTT, J. concurs in the result.
NOTES
[1] Although the Commonwealth erroneously indicates in its appellate brief that its appeals are from final orders (see Commonwealth's Brief at 1), it included the proper certification pursuant to Pa.R.A.P. 311(d) in both notices of appeal. Notice of Appeal, 5/13/10; Notice of Appeal, 8/23/10; see Pa.R.A.P. 311(d) ("In a criminal case, under the circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution."). We are therefore able to address the issues raised in this interlocutory appeal. Commonwealth v. Andre, 17 A.3d 951, 955-56 (Pa.Super.2011).
[2] The charges included: one count of murder of the first degree (18 Pa.C.S.A. § 3502(a)); one count of murder of the third degree (18 Pa.C.S.A. § 2502(c)); one count of assault on a law enforcement officer (18 Pa.C.S.A. § 2702.1); nine counts of aggravated assault (18 Pa.C.S.A. § 2702); four counts of simple assault (18 Pa.C.S.A. § 2701); 11 counts of recklessly endangering another person (18 Pa. C.S.A. § 2705); one count of terroristic threats (18 Pa.C.S.A. § 2706); and two counts of possessing an instrument of crime (18 Pa. C.S.A. § 907).
[3] A person commits aggravated assault, in relevant part, if he or she:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;
(2) attempts to cause or intentionally, knowingly or recklessly causes serious bodily injury to any of the officers, agents, employees or other persons enumerated in subsection (c) or to an employee of an agency, company or other entity engaged in public transportation, while in the performance of duty;
(3) attempts to cause or intentionally or knowingly causes bodily injury to any of the officers, agents, employees or other persons enumerated in subsection (c), in the performance of duty;
(4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon;
(5) attempts to cause or intentionally or knowingly causes bodily injury to a teaching staff member, school board member or other employee, including a student employee, of any elementary or secondary publicly-funded educational institution, any elementary or secondary private school licensed by the Department of Education or any elementary or secondary parochial school while acting in the scope of his or her employment or because of his or her employment relationship to the school[.]
18 Pa.C.S.A. § 2702(a)(1)-(5) (emphasis added).
"Bodily injury" is defined as "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S.A. § 2301. "Serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Id. Thus, when one attempts to commit serious bodily injury, he or she necessarily attempts to commit bodily injury.
[4] We review questions concerning the admissibility of evidence for abuse of discretion. Commonwealth v. Lomax, 8 A.3d 1264, 1266 (Pa.Super.2010).