J-A08030-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JODY J. MARTZ | : | |
| | : | |
| Appellant | : | No. 633 WDA 2021 |

Appeal from the Judgment of Sentence Entered May 3, 2021
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s):  CP-65-CR-0004751-2016

BEFORE:  BENDER, P.J.E., LAZARUS, J., and McCAFFERY, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED: MAY 27, 2022**

Jody J. Martz appeals from the judgment of sentence, imposed in the Court of Common Pleas of Westmoreland County, after a jury convicted him of assault of law enforcement officer,[1] three counts of aggravated assault,[2] two counts of recklessly endangering another person,[3] and four counts of simple assault.[4]  On appeal, Martz challenges the sufficiency of the evidence supporting his conviction for assault of a law enforcement officer.  We affirm.

The trial court set forth the relevant facts of this case as follows:

> The charges arose from a domestic violence incident that occurred on August 31, 2016, at 113 Thomas Street, McCullough,

---

[1] 18 Pa.C.S.A. § 2702.1(a).

[2] 18 Pa.C.S.A. § 2702(a)(1), (2), and (4).

[3] 18 Pa.C.S.A. § 2705.

[4] 18 Pa.C.S.A. § 2701(a)(1).

Pennsylvania, the residence of [Martz] and his wife, Wendy Martz. Officers David Noll, Robert Broome[,] and Thomas Seefeld, the three Penn Township police officers who responded to a 911 call regarding that residence, testified on behalf of the Commonwealth. According to Officer Noll, the 911 dispatcher advised him before the incident "that the individual at the home had attacked several females, and that he was being violent, and that [the women] were leaving the house." [Officer] Noll recalled being advised that [Martz] was in the house, and there was a gun in the house. However, [Officer] Noll was told that [Martz] did not have the gun in his immediate possession and had not threatened anyone with it. Officer Noll testified that he approached the residence around 7:00 p.m. in his marked police vehicle, with its lights and siren activated. He turned off his siren shortly before arriving at the residence. [Officer Noll] parked his vehicle on Thomas Street and saw that fellow Penn Township Officers Broome and Seefeld were already at the scene. All three officers were wearing their police uniforms. The officers asked 911 dispatchers to call the residence to make contact with [Martz], but the dispatchers [were unsuccessful]. Officer Noll said that[,] at that point, [the officers] decided to approach the house to make personal contact with [Martz].

[Officer] Noll walked up the steps to the porch and, as he was trained to do, stood to the right side of the front door as he was facing it, between the door and the window to [the] right of the door. Officer Broome stood to [Officer] Noll's right of that window, and Officer Seefeld stood by the corner of the house, to [Officer] Broome's right. Officer Noll rang the doorbell and knocked on the door twice, while loudly announcing "police!" There was no response. Officer Broome knocked on the outside wall of the residence and also loudly announced "police!" Officer Noll testified that "that's when it happened. . . . After the second knock, there was a few seconds, and then there was a gunshot." Officer Noll said that he could "feel the percussion of the blast," and that he "felt he had been hit with something on the side of his chest." He also testified that his ears were ringing and he couldn't hear, especially out of his right ear. He had been shot in the chest, [which] had resulted in damage to the right pocket of his uniform. He claimed that "the flap was shredded and the chain to [his] traffic whistle was broken." Despite this, [Officer] Noll did not realize that he had been injured until hours later, when he was taking off his uniform. He noticed a mark on his right breast, which caused him pain for "probably a day or so after."

* * *

Donald Lucas, examiner and instructor for PATC Tech, a digital forensic services and training company, testified on behalf of the Commonwealth as an expert in digital forensic analysis and examination. Lucas was asked to examine [Martz's] cell phone, which came into the possession of the District Attorney's Office after [Martz's] arrest. After ensuring that the phone was in working order, Lucas extracted the call log, contacts[,] and text messages, specifically those sent during the evening of August 31, 2016. Lucas testified that he located a text from [Martz] to his sister, Amy Home, in which [Martz] said:

> Amy, I love you and Mom, but I got in real big trouble tonight. I shot at a cop. I will die today. Please forgive me.

Lucas extracted a message received by [Martz] shortly thereafter, wherein Home advised [Martz] to turn himself in.

Trial Court Opinion, 9/22/21, at 3-5, 14-15 (citations to record omitted).

On September 25, 2021, a jury convicted Martz of the above offenses. On May 3, 2021, the trial court sentenced him to an aggregate term of 20 to 40 years' incarceration. Martz filed a timely appeal, followed by a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.[5] Martz raises the following claim for our review:

_____

[5] Both the trial court and the Commonwealth assert that Martz has waived his claim on appeal because his Rule 1925(b) statement contained only boilerplate claims that did not specify the elements of the offense not satisfied by the Commonwealth. **See** Trial Court Opinion, 9/22/21, at 17-19; Brief of Appellee, at 3-13. **See also Commonwealth v. Rivera**, 238 A.3d 482, 495 (Pa. Super. 2019) ("In order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's [Rule] 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient."). Here, Martz's Rule 1925(b) statement framed his appellate claim as follows: "[T]he verdict of guilty of assault of a law

Whether the evidence was insufficient to support a guilty verdict when there was no evidence by the Commonwealth presented [sic] that [Martz] intended to cause bodily injury to a law enforcement officer.

Brief of Appellant, at 8.

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner[,] giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence[,] coupled with the reasonable inferences drawn therefrom[,] overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

---

enforcement officer was not supported by sufficient evidence." Pa.R.A.P. 1925(b) Statement, 8/3/21, at ¶ 8 (unnecessary capitalization omitted). While we agree that Martz did not properly specify "the element . . . upon which [he] alleges that the evidence was insufficient," *Rivera*, *supra*, we nonetheless decline to find waiver. The trial court addressed Martz's sufficiency claim, and our appellate review is not hampered by the deficiency in Martz's Rule 1925(b) statement.

- 4 -

***Commonwealth v. Sebolka***, 205 A.3d 329, 336–37 (Pa. Super. 2019). Importantly, "the jury, which passes upon the weight and credibility of each witness's testimony, is free to believe all, part, or none of the evidence." ***Commonwealth v. Ramtahal***, 33 A.3d 602, 607 (Pa. 2011).

Here, Martz challenges his conviction for assault of a law enforcement officer, claiming that the Commonwealth did not prove the requisite *mens rea* for attempt, where no bodily injury was caused. Martz argues that his text message to his sister is not evidence of intent, "but rather a realization after opening the front door immediately after the firearm was discharged and seeing the officers retreating. [Martz] could easily infer that the officers believed he had shot at them[,] as the officers had their guns pointed at him." Brief of Appellant, at 17. Martz also argues that "communication by [Martz] to Detective [Brad] Buchsbaum reveals that . . .[,] based on the knocking, [Martz] could tell where the officer was and discharged the firearm toward an area he believed was away from the police." *Id.* at 18. Martz asserts that he had ample opportunity to shoot the officers had he wished to do so.

> [I]f [Martz] had the intent to cause bodily injury to Officer Noll or any of the other responding law enforcement officers, he had ample opportunity. He could have aimed and discharged the firearm at the front door, in the direction of the knocking. In the alternative, [Martz] could have opened the front door and discharged the firearm directly at the officer knocking or reloaded the firearm and discharged it a second time when he [] open[ed] the front door. None of these situations took place[,] though[,] because [Martz] did not intend to cause bodily injury to a law enforcement officer.

*Id.* at 18-19. Martz is entitled to no relief.

- 5 -

To convict a defendant on a charge of assault of a law enforcement officer under section 2702.1, the Commonwealth must prove that: (1) the defendant attempted to cause, or intentionally or knowingly caused, bodily injury; (2) the victim was a law enforcement officer acting in the performance of his duty; (3) the defendant had knowledge the victim was a law enforcement officer; and (4) in attempting to cause, or intentionally or knowingly causing such bodily injury, the defendant discharged a firearm. *Commonwealth v. Landis*, 48 A.3d 432, 445 (Pa. Super. 2012) (en banc). "A person commits an attempt when, with intent to commit a specific crime, he does any act [that] constitutes a substantial step toward the commission of that crime." 18 Pa.C.S.A. § 901(a). Thus, criminal attempt under section 2702.1 requires "a showing of some act, albeit not one actually causing bodily injury, accompanied by an intent to inflict bodily injury upon a law enforcement officer by discharging a firearm." *Landis*, 48 A.3d at 446.

Section 302 of the Crimes Code addresses general requirements of culpability and defines "intentionally" as follows:

> § 302. **General requirements of culpability**
>
>         \*    \*    \*
>
> (b) **Kinds of culpability defined**.—
>
> (1) A person acts intentionally with respect to a material element of an offense when:
>
>> (i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result; and

(ii) if the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they exist.

18 Pa.C.S.A. § 302(b)(1)(i), (ii) (bold in original).

As our Court has previously stated with regard to proving intent for criminal attempt:

An intent is a subjective frame of mind, it is of necessity difficult of direct proof[.] [W]e must look to all the evidence to establish intent, including, but not limited to, [the defendant's] conduct as it appeared to his eyes[.] Intent can be proven by direct or circumstantial evidence; it may be inferred from acts or conduct or from the attendant circumstances.

**Commonwealth v. Alford**, 880 A.2d 666, 671 (Pa. Super. 2005) (quotation omitted). "The intent for attempt may be shown by circumstances which reasonably suggest that a defendant intended to cause [bodily] injury." **Commonwealth v. Emler**, 903 A.2d 1273, 1277 (Pa. Super. 2006) (quotation omitted). Thus, in order to prove an attempt under [s]ection 2702.1, the Commonwealth must demonstrate both a substantial step plus an intent to cause bodily injury to a law enforcement officer by discharging a firearm.

**Landis**, 48 A.3d at 446.

Here, the Commonwealth presented sufficient evidence to prove that Martz attempted to cause bodily injury to one or more of the officers located outside his front door by discharging a firearm in the officers' direction. Martz was aware that officers were at and in the vicinity of his front door, as both Officer Noll and Officer Broome knocked and announced the presence of the police. **See** N.T. Trial, 9/21/20, at 171 (Detective Brad Buchsbaum testifying Martz told police he heard knocking at door and heard police announce their presence). Martz told police that, when his wife and the other women fled the

house, "he knew that the police would be coming[,] so he went downstairs to his basement and retrieved a .270 Savage rifle" and loaded it with three rounds. *Id.* Although Martz stated that he intended to take his own life when he retrieved the rifle, *see id.*, the jury could have reasonably found Martz's claim to be self-serving and not credible.[6] In addition, Martz told police he aimed his shot at a light switch "beside the front door," at a time when he knew police were right on the other side of that door. *Id.* at 172. Finally, after firing the shot, Martz texted his sister, saying "I got in real big trouble tonight. **I shot *at* a cop**."[7] N.T. Trial, 9/23/20, at 141 (emphasis added). Based on the foregoing, the jury could have reasonably inferred that Martz had deliberately aimed at the officers. "[A] gun is a lethal weapon; pointing it towards a person, and then discharging it, speaks volumes as to one's intention." *Landis*, 48 A.3d at 447, quoting ***Commonwealth v. Hall***, 830 A.2d 537, 543 (Pa. 2003).

In sum, the evidence presented at trial established that Martz aimed and discharged a lethal weapon in a location where he knew police officers to be standing, and immediately thereafter texted his sister that he had "shot **at**

---

[6] Moreover, as the trial court aptly notes, "[i]f [Martz's] intention had been merely to commit 'suicide by cop,' and not to hurt anyone else, he could have shot downward into the basement or upward toward the second floor." Trial Court Opinion, 9/22/21, at 21. Instead, "he shot to the side of the front door—not only into the vicinity of Office Noll, but at his body." *Id.*

[7] As used by Martz, the word "at" serves as "a function word to indicate the goal of an indicated or implied action or motion[.]" https://www.merriam-webster.com/dictionary/at (last visited May 10, 2022). Thus, Martz's use of the word raises a clear inference of intent to shoot a police officer.

a cop." N.T. Trial, 9/23/20, at 141 (emphasis added). The evidence was sufficient to prove Martz acted with the requisite intent to establish the offense of criminal attempt as contemplated by section 2702.1.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/27/2022