J. S20003/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| FRANK D. McGINNIS, | : | No. 1511 WDA 2013 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, April 10, 2013,
in the Court of Common Pleas of Allegheny County
Criminal Division at No. CP-02-CR-0007327-2011

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN AND WECHT, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED MAY 18, 2015**

Frank D. McGinnis appeals from the judgment of sentence of April 10, 2013, following his conviction of aggravated assault.  Appointed counsel, Christy P. Foreman, Esq., has filed a petition to withdraw and accompanying **_Anders_**[1] brief.  After careful review, we grant counsel's withdrawal petition and affirm the judgment of sentence.

Appellant was charged with aggravated assault and attempted murder in connection with the May 2, 2011 beating of his ex-girlfriend, Madora Albert ("the victim").  Appellant struck the victim multiple times with a furnace pipe, breaking her jaw.  Following a jury trial held January 14-15, 2013, appellant was found guilty of one count of aggravated assault.

---

[1] **_See Anders v. California_**, 386 U.S. 738 (1967), and **_Commonwealth v. McClendon_**, 434 A.2d 1185 (Pa. 1981).

Appellant was found not guilty of criminal attempt -- homicide. On April 10, 2013, appellant was sentenced to 9 to 20 years' incarceration. Trial counsel was permitted to withdraw, and present counsel was appointed to represent appellant on direct appeal. Post-sentence motions were denied, and this timely appeal followed. Appellant has complied with Pa.R.A.P., Rule 1925(b), 42 Pa.C.S.A., and the trial court has filed a Rule 1925(a) opinion.

Appellant has raised the following issues for this court's review:

1. Whether the evidence presented in this matter was legally insufficient to sustain a conviction of aggravated assault?

2. Whether the verdict in this matter was against the weight of the evidence?

3. Whether the sentence imposed was excessive?

Appellant's brief at 7.

Counsel having filed a petition to withdraw, we reiterate that "[w]hen presented with an **Anders** brief, this court may not review the merits of the underlying issues without first passing on the request to withdraw." **Commonwealth v. Daniels**, 999 A.2d 590, 593 (Pa.Super. 2010), citing **Commonwealth v. Goodwin**, 928 A.2d 287, 290 (Pa.Super. 2007) (**en banc**) (citation omitted).

In order for counsel to withdraw from an appeal pursuant to **Anders**, certain requirements must be met, and counsel must:

> (1)    provide a summary of the procedural history and facts, with citations to the record;
>
> (2)    refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3)    set forth counsel's conclusion that the appeal is frivolous; and
>
> (4)    state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Id.*, quoting ***Commonwealth v. Santiago***, 978 A.2d 349, 361 (Pa. 2009).

Upon review, we find that Attorney Foreman has complied with all of the above requirements. In addition, Attorney Foreman served appellant a copy of the ***Anders*** brief, and advised him of his right to proceed ***pro se*** or hire a private attorney to raise any additional points he deemed worthy of this court's review. Appellant did file a ***pro se*** response to counsel's petition to withdraw on February 4, 2015. The issues raised therein will be addressed at the end of this memorandum. As we find the requirements of ***Anders*** and ***Santiago*** are met, we will proceed to the issues on appeal.

> Our standard of review for a challenge to the sufficiency of the evidence is well settled. We must view all the evidence in the light most favorable to the verdict winner, giving that party the benefit of all reasonable inferences to be drawn therefrom. Additionally, it is not the role of an appellate court to weigh the evidence or to substitute our judgment for that of the fact-finder.

J. S20003/15

*Commonwealth v. Alford*, 880 A.2d 666, 669-670 (Pa.Super. 2005), *appeal denied*, 890 A.2d 1055 (Pa. 2005), quoting *Commonwealth v. Gruff*, 822 A.2d 773, 775 (Pa.Super. 2003), *appeal denied*, 863 A.2d 1143 (Pa. 2004) (citations omitted).

Aggravated assault is defined at 18 Pa.C.S.A. § 2702, which provides in relevant part:

> **(a)** **Offense defined.--**A person is guilty of aggravated assault if he:
>
> (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;

18 Pa.C.S.A. § 2702(a)(1). "Serious bodily injury" is defined as "Bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. Instantly, appellant was convicted of a single count of aggravated assault as a first-degree felony under Subsection (a)(1).

The victim testified that in April 2011, she broke up with appellant but they still lived together at 1117 Bessica Street in Wilkinsburg. (Notes of testimony, 1/14-15/13 at 26-28.) The home was owned by her aunt. (*Id.* at 40.) The victim was allowing him to live there until he found a new place. (*Id.* at 28.) On May 2, 2011, the victim was sitting on the porch talking on

the phone with her friend, Trinette Wilson ("Trinette"). (***Id.*** at 27.)
Appellant came home from work and appeared to be angry. (***Id.*** at 29, 41-42.) Appellant complained that the victim had not cooked him anything to eat. (***Id.*** at 29, 42.) Appellant went inside the house, returned to the porch and stated, "you have been here all day and you ain't cooked nothing?" (***Id.*** at 29.) The victim replied that she had not been there all day and continued talking on the phone. (***Id.*** at 29, 42-43.)

At that point, appellant picked up a pipe from the end of the porch and began striking the victim with it. (***Id.*** at 29.) The victim testified that appellant struck her in the head and threatened to kill her:

> He started beating me in my head, constantly talking about I will kill you, I'll kill you, I'll kill you. The one last final blow I fell to the, like to the end of my porch. Like my porch has one step before you are on the main porch. I fell flat like this with my face turned this way. Even while I was down he continued to beat me in my back, I'll kill you, I'm [sic] kill you, I told you that I will kill you. Right now I'm like so just out of it. I turned and while I'm down I closed my eyes, I'm going to die. He was really trying to kill me. I was totally shocked. I can't believe that he would do something like that to me.

***Id.*** at 30.

Eventually, appellant stopped hitting the victim and threw the pipe into an empty lot next to the house. (***Id.*** at 32.) The victim testified that she suffered a broken jaw and continues to have problems related to the incident, including migraine headaches and fibromyalgia. (***Id.*** at 37-38.)

The victim testified that she is still taking medication and going to therapy. (*Id.* at 37.) She is unable to walk far or hold her grandchildren. (*Id.*) The victim described her ongoing chronic injuries as "a nightmare." (*Id.* at 38.)

The victim's account of the incident was corroborated by Trinette and her daughter, Nikki Albert ("Nikki"). Trinette testified that she was on the phone with the victim when she heard appellant come home. (*Id.* at 56.) She overheard appellant complain that the victim was home all day and had not cooked him anything. (*Id.* at 56-57.) The victim answered that she had not been home all day, she had just gotten home. (*Id.* at 57.) Trinette then heard the victim say, "you are going to do what," and the phone went dead. (*Id.*) Trinette testified that the victim did not call her back and she "got bad vibes," so she called the victim's daughter and asked her to check on the victim. (*Id.*)

Nikki testified that she lives only about two blocks from her mother, the victim. (*Id.* at 59.) After speaking with Trinette, Nikki proceeded to the victim's house where she saw appellant throw something into the grass next to the house. (*Id.* at 60.) Nikki testified that the victim appeared to be upset, and was stumbling. (*Id.* at 64.) The victim hid behind Nikki and stated that appellant had hit her with a pipe. (*Id.* at 60-61, 64.) Appellant claimed that the victim had fallen. (*Id.* at 61, 65.) Nikki called the police. (*Id.*)

Officer Ronald Waz of the Borough of Wilkinsburg Police testified that when he arrived on the scene, appellant was intoxicated. (*Id.* at 69.) Appellant claimed that he had accidentally tripped the victim and she had fallen down the steps and hit her head. (*Id.*) Officer Waz observed blood on the porch and front steps. (*Id.* at 75.) After speaking with Nikki, Officer Mark Wilson recovered a pipe from a grassy area adjacent to the victim's residence. (*Id.* at 77.) Officer Wilson testified that the pipe did not appear to have been lying there for any length of time. (*Id.* at 77-78.) The pipe was described as a heavy copper pipe. (*Id.* at 71.)

Michael Lynch, M.D., an emergency physician, testified that he treated the victim at UPMC Presbyterian on May 2, 2011, the date of the incident. (*Id.* at 88.) The victim had significant swelling on the right side of her face and complained of facial pain. (*Id.*) The victim related that she had lost consciousness and complained of pain in her neck and back. (*Id.*) The victim stated that she had been struck with a pipe. (*Id.*) A CT scan revealed a fracture of the victim's jaw on the right side. (*Id.* at 89.) Dr. Lynch testified that the victim's injuries were not consistent with falling down stairs. (*Id.* at 91.)

Clearly, this evidence was sufficient for the jury to find that appellant intentionally caused the victim serious bodily injury. Appellant struck the victim repeatedly with a heavy metal pipe. The victim testified that during the beating, appellant threatened to kill her. The victim sustained serious

injuries including a broken jaw. The victim testified that she continues to experience pain and physical limitations as a result of the beating. Appellant's sufficiency argument is without merit.

We now turn to appellant's weight of the evidence claim.[2]

> A weight of the evidence claim concedes that the evidence is sufficient to sustain the verdict, but seeks a new trial on the ground that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice.

> ***Commonwealth v. Lyons***, ___ Pa. ___, 79 A.3d 1053, 1067 (2013).

> The Pennsylvania Supreme Court has reiterated the proper standard of review of a weight claim as follows:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" It has often been stated that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a

---

[2] This claim was preserved in appellant's amended post-sentence motion. (Docket #44.) Pa.R.Crim.P. 607.

new trial is imperative so that right may be given another opportunity to prevail."

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> Appellate review of a weight claim *is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.* Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:

> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.
>
> ***Commonwealth v. Clay***, ___ Pa. ___, 64 A.3d 1049, 1054-1055 (2013) (citations omitted) (emphasis in original).

***Commonwealth v. Orie***, 88 A.3d 983, 1015-1016 (Pa.Super. 2014).

At trial, appellant argued that the victim's account of the incident was not credible. Although the victim suffered a fractured jaw, appellant claimed that if she had been beaten with the heavy copper pipe, she would have sustained far more serious injuries. (Notes of testimony, 1/14-15/13 at 114-115.) Appellant also argued that the medical evidence did not corroborate the victim's claims of spinal injuries and concussions. (***Id.*** at 116-117.) According to appellant, the victim's testimony that she was

savagely beaten was not supported by the physical evidence. (*Id.* at 117.) Appellant also pointed out that there was no DNA, blood, or fingerprints recovered from the pipe. (*Id.*)

While appellant chose to downplay the seriousness of the victim's injuries, it was not disputed that she suffered a fractured jaw, an injury that Dr. Lynch characterized as consistent with being struck in the face with a pipe. (*Id.* at 91, 97.) Appellant argued to the jury that there was no blood; however, that was factually incorrect. (*Id.* at 116.) Officer Waz testified that he observed blood at the scene, on the porch and front steps. (*Id.* at 75.) In addition, the victim's testimony was corroborated by Trinette and Nikki. Nikki testified that shortly after the incident, the victim appeared to be upset and had difficulty walking. (*Id.* at 64.) The victim stated that appellant had hit her with a pipe. (*Id.* at 60.) As she was approaching the victim's residence, Nikki saw appellant toss something into the bushes. (*Id.*) The pipe, which the victim identified as the weapon used by appellant, was recovered by Officer Wilson who testified it did not appear to have been there very long. (*Id.* at 38, 77-78.) Regarding the lack of forensic evidence such as fingerprints, it was explained that a lack of latent fingerprints does not mean that the object was not touched. (*Id.* at 104-105.)

Any minor inconsistences or discrepancies in the evidence were for the jury to resolve. The jury is free to believe all, part, or none of the evidence. Obviously, the jury found the victim's testimony to be credible. The jury

was free to reject appellant's argument that the victim would necessarily have sustained far more serious and obvious injuries from being beaten with a heavy metal pipe. The victim testified that she continues to experience chronic pain and physical limitations as a result of the attack. Certainly the jury's verdict does not shock the judicial conscience. The trial court did not abuse its discretion in denying appellant's weight of the evidence claim.

Next, appellant challenges the discretionary aspects of his sentence. An appellant's right to challenge the discretionary aspects of his sentence is not absolute. *Commonwealth v. Barzyk*, 692 A.2d 211, 216 (Pa.Super. 1997). Rather, a party who desires to raise such matters must petition this court for permission to appeal and demonstrate that there is a substantial question that the sentence is inappropriate. 42 Pa.C.S.A. § 9781(b); *Commonwealth v. Tuladziecki*, 522 A.2d 17, 18 (Pa. 1987). The determination of whether a particular issue constitutes a substantial question as to the appropriateness of sentence must be evaluated on a case-by-case basis. *Barzyk*, 692 A.2d at 216. In fulfilling this requirement, the party seeking to appeal must include in his or her brief a concise statement of reasons relied upon in support of allowance of appeal.

Pa.R.A.P. 2119(f),[3] **Commonwealth v. Saranchak**, 675 A.2d 268, 277 (Pa. 1996), **cert. denied**, 519 U.S. 1061 (1997).

Instantly, appellant has failed to set forth in his brief a concise statement of reasons relied upon for allowance of appeal. The Commonwealth has specifically objected to this omission. (Commonwealth's brief at 17-18). Therefore, the defect is fatal and this court is precluded from addressing the merits of appellant's challenge. **Commonwealth v. Davis**, 734 A.2d 879, 882 n.4 (Pa.Super. 1999).[4]

Finally, we turn to appellant's issues raised in his **pro se** response to Attorney Foreman's withdrawal petition. Appellant argues that Attorney Foreman was ineffective for filing a petition to withdraw and **Anders** brief. Appellant claims that by doing so, Attorney Foreman has essentially abandoned him and failed to act in his best interests. Appellant

---

[3] Pa.R.A.P. 2119(f) states:

> **(f) Discretionary aspects of sentence.** An appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence. The statement shall immediately precede the argument on the merits with respect to the discretionary aspects of sentence.

[4] We note that with the deadly weapon enhancement and his prior record score of 5, appellant's sentence of 9 to 20 years' incarceration fell within the standard range of the sentencing guidelines.

also states that in an *Anders* brief, counsel is required to set out the issues in neutral form and not argue against her own client.

Appellant simply misconstrues current *Anders* practice. Pursuant to *Santiago*, *supra*, counsel petitioning to withdraw on direct appeal must explain why the issues his/her client wishes to pursue on appeal are meritless. In addition, if an attorney is of the opinion that there are no meritorious issues to be raised on appeal and the appeal is wholly frivolous, he or she is obligated to file a petition to withdraw and *Anders* brief. Attorney Foreman was not ineffective in this regard, as appellant alleges.

Appellant claims he requested trial counsel obtain a transcript or recording of the 911 call. However, appellant does not explain how the 911 call placed by Nikki after she arrived at the victim's house could possibly exonerate him. In addition, any claims of trial counsel ineffectiveness would have to wait until collateral review. *See Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002) (defendants should wait until the collateral review phase to raise claims of ineffective assistance of counsel). Nor do either of the exceptions to the *Grant* rule outlined in *Commonwealth v. Holmes*, 79 A.3d 562 (Pa. 2013), apply here.

Appellant also argues that the victim and other Commonwealth witnesses gave false testimony. According to appellant, there is no evidence that the victim's jaw was broken. Appellant contends that at most, his actions constituted a simple assault.

Contrary to appellant's argument, there was uncontradicted medical evidence that the victim's jaw was, in fact, broken. Appellant fails to articulate what other testimony was allegedly false or perjured. To the extent appellant levels claims of trial counsel ineffectiveness, again, they are not cognizable on the instant direct appeal and would have to be raised in a timely post-conviction petition.

Having determined that the instant appeal is wholly frivolous, and after our own independent review, that there are no issues of arguable merit apparent from the record, we will grant Attorney Foreman's petition to withdraw and affirm the judgment of sentence.

Petition to withdraw granted. Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/18/2015