J-A30014-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                              :          PENNSYLVANIA
                              :
        v.                    :
                              :
                              :
                              :
VONDA KAY BROWN               :
                              :
        Appellant             :  No. 615 WDA 2017

Appeal from the Judgment of Sentence Entered March 9, 2017
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0004011-2015

BEFORE:   SHOGAN, J., KUNSELMAN, J., and STRASSBURGER*, J.

MEMORANDUM BY SHOGAN, J.:                       FILED APRIL 5, 2019

Appellant Vonda Kay Brown appeals from the judgment of sentence

entered on March 9, 2017, following her conviction for, inter alia, aggravated

assault, 18 Pa.C.S. § 2702(a)(1).[1]  After careful review, we affirm.

The trial court set forth the following factual history:

    This matter arises out of the . . . charges being filed against
    [Appellant] when her severely disabled son was found to have
    second degree burns to his right hand while under the care of
    [Appellant].  The Commonwealth established that on October 13,
    2014[,] the victim was brought by [Appellant] to the emergency
    room of Ohio Valley Hospital at 7:29 p.m. with a complaint of right
    hand swelling. The triage nurse described the victim's right hand
    as being swollen with multiple areas of large serosanguineous-
    filled blisters.  [Appellant] stated her son woke up with his hand

_____

[1]   Appellant also plead guilty to one count of false/fraudulent medical
assistance claim, 62 P.S. § 1407(a)(1), and one count of unentitled
reimbursement, 62 P.S. § 1407(a)(12), at a separate docket and was
sentenced for those convictions on February 7, 2017.  Those convictions are
not implicated in the instant appeal.

_____

*   Retired Senior Judge assigned to the Superior Court.

in that condition and that for the past few days the victim had been hitting himself in the mouth with his right hand and that she had put a sock on his hand to protect it and that when she removed the sock that morning his hand was swollen. The triage nurse believed that based on the appearance of his hand that it had been burned. She testified that after she conducted her examination she notified the [hospital physician that] victim's hand was burned.

The Commonwealth offered photographs of the victim's hand taken at the time of his presentation to the hospital which showed the swelling and blistering of the hand as well as a clear straight line of demarcation of the injury in the area of the wrist. As a result of his disability, the victim was described as being non-verbal with his arms, wrists and legs being severely contracted. Although [Appellant] informed the nursing personnel that the victim had been hitting his hand on his face, there was no bruising or injuries to his face.

The Commonwealth called Officer Greg Boss of the City of Pittsburgh Police Sex Assault and Family Crisis Unit who testified that during his investigation he interviewed [Appellant] and that:

> She told me that sometime between the 10th and 13th her son [hit] himself in the mouth with his right hand, which caused a cut to his hand. At that time she covered it to protect [it] with a sock, and a few days later she noticed after she took the sock off that it was badly infected at the time.

Boss also testified that [Appellant] was "very clear" during their interview "that she was the sole provider and caretaker for her son, nobody else cared for him but her."

On cross examination Boss acknowledged he initially interviewed the victim's primary care physician who wasn't able to conclusively say how the injury happened and, therefore, determined that the charges were "unfounded." He also testified, however, that at that time he had not yet reviewed the photographs of the victim's hand or obtained the medical records. He further testified that: "So when I got the pictures and I saw how severe they were, I felt that it needed to be investigated more thoroughly." He also spoke with physicians, including Dr. Stacy Lane, who informed him that the injury to the victim's hand was a submersion burn.

The Commonwealth also called Dr. Stacy Lane, an infectious disease specialist. Dr. Lane testified that she examined the victim on October 14, 2014 to determine if his injury was the result of an infection. She indicated that her examination showed that the victim had "marked bulbous lesions of his hand with splitting." She testified on her examinations he did not have any of the signs of a primary infection, including white blood cell count elevation, fever, elevated C-reactive protein or elevated sedimentation rate and his blood cultures were normal. She testified that there were no bite marks or cuts on the hand and that there was no purulence, puss or induration which would be consistent with an infection from a bite or infectious injury to the hand. She indicated that if the injury was the result of a bite which is then covered with a sock for an extended period there would be significant purulence, a foul smell, necrosis and disfigurement. It was her opinion the injury was a burn with resulting cellulitis. She testified on cross-examination that she believed the injuries were caused when the hand was "dunked in something hot," but acknowledged that she could not determine whether it was something hot or something chemical.

The Commonwealth also called Dr. Michael Lally, a general and vascular surgeon, who testified that he examined the victim on October 14, 2014 and found that his hand was covered with water blisters which he believed were from a burn from immersion. Due to the appearance of the injury he ordered that photographs be taken. He testified that all the melanin in the skin was burn[ed] and lifted off and water blisters were uniformly distributed across the entire hand all the way up from the nails to the transition area of the wrist leaving [a] pink area of underlying dermis. Dr. Lally testified that in a thermal or scald injury the first thing that happens is that water blisters occur over the first 5 to 7 days after a burn. The blisters then drain and over the course of the next weeks the area is repopulated with epidermal cells and new skin. Dr. Lally testified that he was informed that the alleged cause of the injury was a sock or glove being placed over a bite or other injury to the hand, however, the wound or injury to the victim's hand was not consistent with that mechanism of injury. Dr. Lally testified that if there was infection there would be a central area of death of the skin and the subcutaneous tissue would be liquefied and it would spread out in a starburst pattern and work its way up the limb. He testified that the victim's hand did not have any of the characteristics of an infection. He testified the injury was equally distributed over the entire hand both on the

palmer and dorsal sides and even in the webs between the fingers with a sharp demarcation line of the injury at the level of the [wrist]. Dr. Lally further testified that the victim did not have any of the signs of infection which would have included redness spreading up his entire arm, swollen lymph nodes in the armpit, elevated white count, fever, or other signs of toxicity. Dr. Lally testified that the victim proceeded through the expected stages of recovery of a scald burn. Dr. Lally testified that it was his opinion that the injury was either a thermal or chemical burn.

The Commonwealth also called Dr. Ariel Aballay, a board-certified general surgeon who practiced burn surgery for 10 years and was director of the West Penn burn unit for three years. Dr. Aballay testified that he reviewed the medical records and the pictures of the victim's hand and interviewed the individuals involved in his care. He testified that based on his review of materials the victim's injuries were consistent with a second degree burn. The characteristics of the injuries were the presence of blisters on the entire hand and a clear line of demarcation between burned and normal skin which was consistent with an injury caused by the submersion of the hand into a hot liquid.

Dr. Aballay also testified there [were] no splattering burns above the demarcation line which would be consistent with someone accidently placing their hand in a hot liquid and then attempting to remove it quickly. In addition, based on the victim having severe contraction of the hips, knees, elbows and wrists it was unlikely that the victim would extend the hand and put it [in] a container with water by himself. He also testified that the appearance of the blisters from a burn would be within 24 to 72 hours depending on the temperature of the water and the time of exposure.

Dr. Aballay testified that the description of the injury occurring from either a bite or blow to the hand which was then covered by a sock, which then resulted in infection, was inconsistent with the demarcation line of the injury at the wrist and the involvement of the palmer aspect of the hand. On cross examination Dr. Aballay testified that the injury was not consistent with a chemical burn due to the uniformity of the injury between the fingers, which was consistent with hot water. He testified that in order to have a second degree burn of the nature shown by the victim the hand would have to be submerged in hot water at 120°F for several minutes but as the temperature increases the length of time necessary to cause the burn decreases.

The Commonwealth called Jennifer Sneer, an agent for the Medicaid Fraud Control Section of the office of the Attorney General who testified that she interviewed [Appellant] concerning the victim's hospitalization and that [Appellant] informed her that in June 2014 the victim had become increasingly combative and that he had been hitting himself in the face with his right hand to the point that he made a cut on his knuckles. [Appellant] further stated that shortly after she had taken the victim to his primary care physician and when she came home she put Neosporin on the cut and put a sock on his hand. [Appellant] also stated that very shortly after the sock became wet with saliva and she replaced the sock in June 2014 and that it stayed on his hand until October 13, 2014 when she removed it.

[Appellant] testified that her son, who was born on June 20, 1990, suffered from cerebral palsy, muscular dystrophy, scoliosis and a seizure disorder. As a result of these conditions he was unable to speak, walk, feed or clothe himself or take care of his personal needs and his arms, legs and hands were severely contracted. She testified that when he would become agitated or would be in pain he would hit himself in the mouth with his fist or put his fist in his mouth and bite it causing cuts or bruises to his hand. She testified that he has been biting his hands since he has been about five years old. [Appellant] testified that in May of 2014 her son was becoming more combative and agitated and in order to protect her son's hand and his teeth she put a sock on his right hand to keep him from biting it and to keep him from knocking his teeth out. She denied that she ever told investigators that she did not remove the sock for an extended period but instead that she changed [it] regularly.

She testified that on October 13, 2014[,] when she removed the sock, which she stated had been on overnight, she noted that his right hand was swollen and had blisters. She testified she called Dr. McKnight's office and talked to her secretary on four occasions and was told to put an ice pack on his hand. She testified that she followed those instructions but wasn't satisfied so she took him to [the] hospital. She testified that she was never told that her son was being treated for a burn but that she saw on one of the reports that he had cellulites. [Appellant] testified she cared for her son throughout his life and denied submerging his hand in water or otherwise burning his hand.

On cross examination she acknowledged that when she arrived at the hospital she told the staff he had been biting

himself, that she had placed a sock on his hand and when she removed the sock that morning his hand was swollen and covered with blisters as shown in the photographs. She denied giving inconsistent statements about the period of time that the sock was on his hand, indicating [that] she had always denied that the sock was on his hand continuously from July to October. She contended that he had an open wound that had become infected which resulted in the appearance of his hand.

[Appellant's] daughter, Breanna McGee, also testified that while she lived with her mother and her brother, [she had never witnessed Appellant act aggressively towards the victim] and that she had a reputation as a good and caring person. Upon consideration of all testimony [Appellant] was found guilty of aggravated assault.

Trial Court Opinion, 6/25/18, at 2–8 (citations omitted).

Appellant was initially sentenced to thirty-six to seventy-two months of incarceration for the aggravated assault conviction under 18 Pa.C.S. § 2702(a)(1).[2] Order, 2/7/17. Appellant filed a post-sentence motion on February 13, 2017. Following a March 9, 2017 hearing on the post-sentence motion, the trial court re-sentenced Appellant to twenty-six to fifty-two months of incarceration. Order, 3/9/17. The trial court re-sentenced Appellant because it found that she was subject to a lower offense gravity score on the grounds that the evidence was not sufficient to establish that the

_____

[2] Pursuant to 18 Pa.C.S. § 2702(a)(1),

(a) Offense defined.--A person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;

victim suffered serious bodily injury due to the lack of testimony about the victim's current condition, including whether he suffered any permanent scarring from the burns.  N.T. (Post-Sentence Motion Hearing), 3/9/17, at 7. Appellant filed a second post-sentence motion, which the trial court denied. This appeal followed.  Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following question for our review:

1. Was the evidence insufficient to convict [Appellant] of aggravated assault (18 Pa.C.S. § 2702(a)(1)) as the evidence failed to establish that the victim suffered serious bodily injury or that she acted with the requisite mens rea?

Appellant's Brief at unnumbered 5.

Our standard for review of a sufficiency of the evidence claim is as follows:

When presented with a claim that the evidence was insufficient to sustain a conviction, an appellate court, viewing all of the evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth as the verdict winner, must determine whether the evidence was sufficient to enable the fact-finder to find that all elements of the offense were established beyond a reasonable doubt.

Commonwealth v. Woody, 939 A.2d 359, 361 (Pa. Super. 2007) (citation omitted).  "Furthermore, '[t]he Commonwealth may sustain its burden by proving the crime's elements with evidence which is entirely circumstantial and the trier of fact, who determines credibility of witnesses and the weight to give the evidence produced, is free to believe all, part, or none of the evidence.'"  Id. at 361–362 (quoting Commonwealth v. Brown, 701 A.2d

252, 254 (Pa. Super. 1997)). "As an appellate court, we do not assess credibility nor do we assign weight to any of the testimony of record." Commonwealth v. Vogelsong, 90 A.3d 717, 719 (Pa. Super. 2014). Further, "circumstantial evidence is reviewed by the same standard as direct evidence—a decision by the trial court will be affirmed so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." Commonwealth v. Bricker, 1014 (Pa. Super. 2005) (quotation omitted). "Additionally[,] we may not reweigh the evidence or substitute our own judgment for that of the factfinder." Commonwealth v. Walker, 139 A.3d 225, 229 (Pa. Super. 2016).

Under 18 Pa.C.S. § 2702 (a)(1), "[a] person is guilty of aggravated assault if he . . . attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly, or recklessly under circumstances manifesting an extreme indifference to the value of human life." 18 Pa.C.S. § 2702(a)(1). As noted by Appellant, the term "serious bodily injury" is defined by statute as "bodily injury which creates a substantial risk of death or which causes serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Appellant's Brief at unnumbered 14 (quoting 18 Pa.C.S. § 2301).

Appellant asserts that intent is a fact-specific inquiry. Appellant's Brief at unnumbered 19. She argues that the Commonwealth failed to produce any witnesses who observed Appellant abuse the victim, and relied instead upon

"medical witnesses," who testified that the victim's injuries could not have occurred as Appellant claimed they did. Id. Specifically, Appellant avers that there was "no evidence as to how [the victim's] injuries occurred," and that "there is a complete lack of evidence as to [Appellant's] actual conduct, which would support a finding of recklessness." Id. at 22. Ultimately, Appellant argues that the Commonwealth failed to prove that she "attempted to cause serious bodily injury to her son, intentionally, knowingly, or recklessly." Id. at 21.

In its Pa.R.A.P. (a) 1925 opinion, the trial court reviewed the evidence presented at trial and held that the following established that Appellant did have the specific intent to cause bodily injury:

> Based on the totality of the evidence, it is clear that the Commonwealth established that [Appellant], who was the sole person in custody and control of the victim, submerged the victim's hand into hot water or other liquid for a sufficient period of time to cause second degree burns to his hand. Based on the victim's physical conditions and abilities, the Commonwealth established that the victim did not accidently or inadvertently place his own hand into the water. The evidence established that a third person would have been required to place his hand into the hot water and submerge it to his wrist for a period of time necessary to cause the burns. It is clear that specific intent to cause serious bodily injury can be inferred from the evidence. The evidence establishes that this was not an inadvertent act in which his hand fell or was placed into hot water and then was quickly pulled away but instead that it was done purposefully and with the intent to cause a serious injury to the hand. Therefore, [Appellant] was appropriately found guilty of aggravated assault.

Trial Court Opinion, 6/25/18, at 10–11.

"For aggravated assault purposes, an 'attempt' is found where the accused, with the required specific intent, acts in a manner which constitutes a substantial step toward perpetrating a serious bodily injury upon another." Commonwealth v. Alford, 880 A.2d 666, 670 (Pa. Super. 2005). In order to determine whether an appellant possessed the requisite intent, this Court will look at both direct and circumstantial evidence. Id. at 670–671. "In determining whether intent was proven from such circumstances, the fact finder is free to conclude the accused intended the natural and probable consequences of his actions to result therefrom." Commonwealth v. Bradley, 69 A.3d 253, 257 (Pa. Super. 2013) (quoting trial court's 1925(a) opinion, 6/21/12, at 4–6) (finding the requisite intent where defendant, an adult male, twisted the arm of small child and fractured child's arm because the "natural consequence of an adult twisting the arm of a small child this hard was a fractured bone.")).

> Because direct evidence of intent is often unavailable, intent to cause serious bodily injury may be shown by the circumstances surrounding the attack. In determining whether intent was proven from such circumstances, the fact finder is free to conclude the accused intended the natural and probable consequences of his actions to result therefrom.

Commonwealth v. Bruce, 916 A.2d 657, 661 (Pa. Super. 2007) (citations and quotations omitted).

As the trial court noted in its Rule 1925(a) opinion, Appellant was the only person who provided care for the victim, who is disabled and dependent upon Appellant for all of his needs. Trial Court Opinion, 6/25/18, at 10.

Moreover, the victim's upper extremities were contracted such that he would have been unable to voluntarily or accidentally extend his hands to place them in hot water. Id. Additionally, three doctors, an infectious disease specialist, a general/vascular surgeon, and a burn specialist, testified that the injuries to the victim were not due to an infection but were the result of the victim's hand being submerged in a hot liquid. Id. This finding was based upon the fact that the victim showed no clinical signs of having an infection; there was a demarcation line between burned and normal skin; and the victim's entire hand was involved. Id. Finally, Dr. Aballay, the burn specialist, testified that the "lack of any splatter burns above the line of demarcation was inconsistent with the hand being inadvertently placed in hot water and being immediately pulled out." Id. Given our standard of review and the evidence put forth by the Commonwealth and accepted by the trier of fact, we are constrained to find that the evidence is sufficient to support Appellant's conviction for aggravated assault pursuant to 18 Pa.C.S. § 2702 (a)(1).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/5/2019

- 11 -