J-S30038-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MYCHAL CASSEL, | : | |
| | : | |
| Appellant | : | No. 1723 EDA 2018 |

Appeal from the Judgment of Sentence May 11, 2018
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0012064-2015

BEFORE:  PANELLA, P.J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                    **FILED JULY 1, 2019**

Mychal Cassel ("Cassel") appeals from the judgment of sentence imposed after a jury convicted him of second-degree murder, robbery, carrying firearms on public streets in Philadelphia, possession of an instrument of crime, and criminal conspiracy.[1]  We affirm.

In its Opinion, the trial court set forth the relevant procedural and factual history underlying this appeal, which we incorporate as though fully set forth herein.  **See** Trial Court Opinion, 8/6/18, at 1-5.  In sum, on January 26, 2014, Cassel and two co-conspirators, Jerome Johnson ("Johnson") and Shafik Lamback ("Lamback"), robbed a drug dealer, Marquise Kemp ("Kemp"), during a drug transaction in a Chinese store in Philadelphia.  Johnson pointed a handgun at Kemp during the robbery, and Cassel, who was armed with a

_____

[1] **See** 18 Pa.C.S.A. §§ 2502(b), 3701(a)(1)(ii), 6108, 907(a), 903(a)(1).

concealed, unlicensed handgun, stood next to Johnson. Shortly after the three co-conspirators fled the store with Kemp's valuables, Kemp's associate, Kyleaf Gordon ("Gordon"), who was standing outside on the sidewalk, fired a handgun in the direction of the co-conspirators in retaliation. Cassel returned fire, striking Gordon in the back with a bullet and killing him.

In this timely appeal, Cassel presents the following issue for our review: "Whether [Cassel's] conviction should be overturned for lack of sufficient evidence to support it beyond a reasonable doubt?" Brief for Appellant at 6.

Initially, we note that,

> when challenging the sufficiency of the evidence on appeal, the [a]ppellant's [court-ordered Rule 1925(b) concise] statement must specify the element or elements upon which the evidence was insufficient in order to preserve the issue for appeal. Such specificity is of particular importance in cases where, as here, the [a]ppellant was convicted of multiple crimes[,] each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt.

***Commonwealth v. Gibbs***, 981 A.2d 274, 281 (Pa. Super. 2009) (citations and quotation marks omitted); ***see also*** Pa.R.A.P. 1925(b)(4)(ii) (requiring that a concise statement "shall concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge."). If the appellant does not specify such elements, the sufficiency claim is deemed waived. ***Gibbs***, 981 A.2d at 281.

Here, Cassel, in his court-ordered Concise Statement, raised a vague challenge to the sufficiency of the evidence,[2] in which he failed to specify the element or elements, or even the specific crimes, for which he contends the evidence was insufficient. Based upon this deficiency, we could find that he waived his sole issue on appeal. ***See id.*** (holding that the appellant's sufficiency challenge was waived where he failed to specify in his concise statement which convictions or the elements of the crimes that he was challenging). Nevertheless, we decline to deem Cassel's claim waived, as the trial court addressed it in its Rule 1925(a) Opinion.

In reviewing a challenge to the sufficiency of the evidence, our standard of review

> requires that we evaluate the record in the light most favorable to the verdict winner[,] giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. The Commonwealth may sustain its burden by means of wholly circumstantial evidence. … Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the [] convictions will be upheld.

---

[2] Specifically, Cassel alleged only the following: "The evidence against [] Cassel is not sufficient enough to convict him." Concise Statement, 8/1/18.

*Commonwealth v. Sebolka*, 205 A.3d 329 at **12-13 (Pa. Super. 2019) (citation and paragraph break omitted).  Finally, "the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Commonwealth v. Melvin*, 103 A.3d 1, 40 (Pa. Super. 2014) (citation omitted).

We additionally note that where, as here,

there is a claim of self-defense, the Commonwealth has the burden to prove beyond a reasonable doubt that the killing was not committed in self-defense.  In order to disprove self-defense, the Commonwealth must prove beyond a reasonable doubt one of the following elements:  (1) that the defendant did not reasonably believe it was necessary to kill in order to protect himself against death or serious bodily harm, or that the defendant used more force than was necessary to save himself from death, great bodily harm, or the commission of a felony; (2) that the defendant provoked the use of force; or (3) that the defendant had a duty to retreat and that retreat was possible with complete safety.  *See* 18 Pa.C.S.A. § 505(b)(2)[.]  If the Commonwealth establishes any one of these three elements beyond a reasonable doubt, then the conviction is insulated from a defense challenge to the sufficiency of the evidence where self-protection is at issue.

*Commonwealth v. Burns*, 765 A.2d 1144, 1148-49 (Pa. Super. 2000) (some citations omitted).

Here, Cassel contends that the Commonwealth failed to present sufficient evidence to convict him of any of the charged offenses, where he (1) did not know that Johnson was going to rob Kemp during the drug transaction, and there was thus no conspiracy; and (2) was in fear for his life,

- 4 -

where Gordon had initially fired a gun in his direction, and Cassel only returned fire in self-defense. Brief for Appellant at 9.

In its Opinion, the trial court defined the offenses of which Cassel was convicted, addressed his sufficiency challenge, and determined that it lacks merit. **See** Trial Court Opinion, 8/6/18, at 10-14. As the trial court's cogent rationale is supported by the record and the law, we incorporate it as though set forth in full herein. **See id.**

Contrary to Cassel's claim, we likewise conclude that there was ample evidence for the jury to find him guilty of all of the charged crimes beyond a reasonable doubt. The evidence, when properly viewed in the light most favorable to the Commonwealth as verdict winner, established that

- Cassel and his co-conspirators approached Kemp, inside the Chinese store, with the intent to rob him;

- Johnson, with the assistance of Cassel and Lamback, pointed a gun at Kemp and robbed him of his valuables;

- Cassel brought a handgun to the robbery and actively participated in it by surrounding Kemp;[3]

- Cassel, Lamback, and Johnson divided the proceeds of the robbery; and

- Cassel, Lamback, and Johnson participated in a similar crime the next day, wherein Cassel and Johnson were armed with the same handguns they had used in the robbery of Kemp.[4]

---

[3] It was not necessary, as Cassel implies, for the Commonwealth to prove that Cassel *personally* robbed Kemp of his valuables. **See Commonwealth v. Galindes**, 786 A.2d 1004, 1011 (Pa. Super. 2001).

[4] In this regard, **see** pages 5-9 of the trial court's August 6, 2018 Opinion.

Moreover, the trial court properly determined that the evidence was sufficient to disprove Cassel's claim of self-defense beyond a reasonable doubt, based on evidence that Cassel, by his involvement in an armed robbery of Kemp and Gordon, "provoked" the encounter that led to Gordon's death. ***See Commonwealth v. Mouzon***, 53 A.3d 738, 740-41 (Pa. 2012); ***Commonwealth v. Johnson***, 331 A.2d 473, 476 (Pa. 1975) (stating that "a valid claim of self-defense cannot be made out by the killer when the killer introduces a weapon into the encounter without provocation. Such introduction operates to deny the killer's assertion that he was free from fault in provoking the difficulty."). Under these circumstances, Cassel's use of deadly force was not justified. ***See*** 18 Pa.C.S.A. § 505(b)(2)(i)-(ii). Accordingly, Cassel's sufficiency challenge fails, and we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/1/19

**IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION**

FILED

2018 AUG -6 PM 2: 25

OFFICE OF JUDICIAL RECORDS
CRIMINAL DIVISION
FIRST JUDICIAL DISTRICT
OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA : CP-51-CR-0012064-2015

                :

                :

         v.            :

                :

                :

MYCHAL CASSEL          :

                :

CP-51-CR-0012064-2015 Comm. v. CASSEL, MYCHAL
Opinion



8146328651

## OPINION

**McDermott, J.**                                                   **August 6, 2018**

**Procedural History**

On July 3, 2015, the Defendant, Mychal Cassel, was arrested and charged with Murder and related offenses and Robbery and related offenses for his involvement in incidents that occurred on January 26, 2014 and January 27, 2014.

On January 29, 2014, the co-defendant, Jerome Johnson, was arrested and charged with Robbery, Aggravated Assault, and related offenses stemming from an incident on January 27, 2014. On July 2, 2015, Johnson was arrested and charged with Murder and related offenses stemming from an incident on January 26, 2014. On February 19, 2014, the co-defendant, Shafik Lamback, was arrested and charged with Robbery, Conspiracy, and related offenses stemming from his involvement in the incident on January 26, 2014. On April 14, 2015, Lamback, was arrested and charged with Robbery and Conspiracy for his involvement in the incident on January 27, 2014. On April 30, 2015, Lamback pled guilty in an open guilty plea after signing a Memorandum of Agreement with the Commonwealth to cooperate against his co-conspirators.

On May 7, 2018, the Defendant and Johnson appeared before this Court and elected to be tried by a jury. On May 10, 2018, the jury convicted the Defendant of Second-Degree Murder,

Conspiracy to Commit Robbery,[1] Robbery, Carrying a Firearm on a Public Street in Philadelphia ("VUFA 6108"), and Possession of an Instrument of Crime ("PIC").[2]

On May 11, 2018, this Court sentenced the Defendant to the mandatory minimum sentence of life imprisonment without parole for Second-Degree Murder and a concurrent sentence of five to ten years of imprisonment for Conspiracy to Commit Robbery, one to two years of imprisonment for VUFA 6108, and one to two years of imprisonment for PIC, for a total sentence of life imprisonment without parole.[3]

On June 8, 2018, the Defendant filed a timely Notice of Appeal. On June 11, 2018, this Court ordered the Defendant to submit a Statement of Matters Complained of on Appeal pursuant Pa.R.A.P. 1925(b). On June 29, 2018, the Defendant filed a Motion for Extension of Time to file a Concise Statement, which this Court granted on July 3, 2018. On August 1, 2018, the Defendant filed a Concise Statement of Matters Complained of on Appeal.[4]

**Facts**

On January 26, 2014, just before 2:00 a.m., outside of 2950 Ridge Avenue, Kyleaf Gordon was shot to death. Just prior to that, Marquise Kemp and Gordon were selling drugs from inside of the New Diamond Chinese Store ("Chinese Store") on the 2900 block of Ridge Avenue. Immediately before Gordon's murder, three males robbed Kemp inside of the Chinese Store.

---

[1] Both Robbery and Conspiracy to Commit Robbery are graded as felonies in the first degree.

[2] The remaining charges from January 26, 2014 were *nolle prossed*. The jury found the Defendant not guilty of all charges related to the January 27, 2014 incident. On that same date, the jury convicted defendant Johnson of Second-Degree Murder, Conspiracy to Commit Robbery, Robbery, VUFA 6108, and PIC. Defendant Johnson was also convicted of Robbery, four counts of Aggravated Assault, VUFA 6108, and PIC from the criminal acts committed on January 27, 2014.

[3] The remaining Robbery charge merged for the purpose of sentencing. On that same date, this Court sentenced defendant Johnson to the mandatory minimum sentence of life imprisonment without parole for Second-Degree Murder and a concurrent sentence of one to two years of imprisonment for VUFA 6108, five to ten years of imprisonment for Conspiracy to Commit Robbery, one to two years of imprisonment for PIC, five to ten years of imprisonment for each of the four counts of Aggravated Assault, and five to ten years for Robbery, for a total sentence of life imprisonment without parole.

[4] Due to a mix-up in Cassel's attorney's office, the 1925(b) was filed passed the extended deadline of July 27, 2018.

2

Kemp, dressed in sweat pants, a black hoody, and black Armani Exchange "bubble" jacket, was counting money inside the store. He turned around to find a person pointing an automatic handgun at him, saying "Give me everything". Kemp provided the man with his jacket, which contained his money, his drugs, and his phone. Two other individuals entered with the gunman; after Kemp turned over his jacket, all three left together. The three men exited the store, turned left, and went to a white vehicle parked on the same side of the road as the Chinese Store, approximately five car lengths away on Ridge Avenue. N.T. 5/7/18 at 81–83, 84–90, 92–94.

Kemp followed the men out of the store, and stated, "They robbed me," to Gordon, who was standing on the opposite side of Ridge Avenue from the Chinese Store. Gordon replied "What did you say?" As Kemp told Gordon he was robbed, Gordon started shooting at the people standing next to the white car. Kemp saw an unspecified number of his robbers return fire at Gordon before he ran off towards 29th Street. Gordon followed, running behind Kemp towards 29th Street. When Kemp looked back, he saw Gordon fall, causing Kemp to stop and return to his friend, who was lying face down. After flipping him over, Kemp saw that Gordon was bleeding from his nose and mouth. Kemp called police but left the scene before they arrived. The white vehicle sped off towards 29th Street as Gordon lay in the street. *Id.* at 92, 94–99.

On February 17, 2014, Kemp provided a statement to Detectives about the night Gordon was killed. Kemp identified a photograph of the Armani Jacket that was taken from him as well as a photograph of the white vehicle he had seen the three people who robbed him flee in. Kemp also identified the people that robbed him in still photos taken from a surveillance video inside the New Diamond Chinese Store. Kemp was unable to recognize any of the doers in a photo identification procedure. *Id.* at 102–104, 107.

3

Shafik Lamback testified for the Commonwealth under a Memorandum of Agreement.[5] On January 26, 2014, Johnson, Cassel, and Lamback drove from their homes in West Philadelphia to the area of 30th Street and Ridge Avenue in Johnson's white Lincoln Town Car to find some drugs and some Percocets. Johnson brought a silver and black .380 handgun and Cassel brought a black .40 caliber handgun with no safety. They were going to North Philadelphia with the intention of robbing someone. N.T. 5/8/18 at 70-75, 103-107, 150.

Johnson drove the three to 30th Street and Ridge Avenue and parked a couple of cars back from the Chinese Store. Prior to entering the store, Lamback knew it was going to be a robbery. Lamback, Johnson, and Cassel entered the store and approached Kemp. Johnson asked Kemp "Do you got drugs?" When Kemp replied in the affirmative, Johnson walked up to Kemp and stated, "Don't move or I'm going to kill you," while pointing his gun in Kemp's rib cage. Cassel stood off to Kemp's right as Lamback guarded the door. Kemp turned over money, marijuana, and Percocets. *Id.* at 76-80, 140.

Lamback, Johnson, and Cassel exited the store towards Johnson's vehicle. Kemp exited behind them and yelled across the street, "They robbed me. They robbed me." When Gordon started firing, Lamback crawled into the back seat of the vehicle and observed Cassel fire multiple shots as he stood outside the front passenger seat. Johnson, with his gun in his hand, took out his keys, got in the driver's side of the vehicle, and drove off. After the three perpetrators returned to West Philadelphia, they divided up the proceeds in equal shares, each receiving $50, a few Percocets, and a couple of bags of marijuana. *Id.* at 81, 83-88.

---

[5] Under the Memorandum of Agreement, Lamback pled guilty to two counts of Robbery and one count of Conspiracy. The sentence would be determined by the judge. The maximum sentence was thirty-five to seventy years of incarceration and the minimum sentence the Judge could impose was six to fifteen years of incarceration. In exchange for that agreement, Lamback had to testify truthfully. N.T. 5/8/18 at 104-107.

Detective Frank Mullen recovered video from inside and outside the New Diamond Chinese Store. Johnson, Cassel, and Lamback are captured parking in front of the store, entering together, and then surrounding Kemp. Lamback identified Johnson, Cassel, and himself during numerous portions of the video. *Id.* at 123–128, 261–265.

At approximately 1:45 a.m., Philadelphia Police Officers Anthony Santulli and Brian Nolan were in their marked police vehicle in the area of 2900 Ridge completing paperwork when they heard several gunshots. They informed police radio and proceeded to that location. Upon arrival, the officers observed an unresponsive male lying face down on the north side of Ridge Avenue, close to 29th Street, suffering from a gunshot wound to his neck. Officers Santulli and Nolan placed the male into the back of their patrol vehicle and transported him to Temple Hospital. At the hospital, the male was identified as 23-year-old Kyleaf Gordon. Gordon was pronounced deceased at 2:06 a.m. *Id.* at 56–60, 62.

Crime Scene Officers responded to the scene and recovered five fired cartridge casings ("FCCs") and a projectile on Ridge Avenue. Two FCCs were located on the same side of the street as the New Diamond Chinese Store; three FCCs and the projectile were located on the opposite side of the street. N.T. 5/9/18 at 19–24.

Dr. Albert Chu, the Deputy Chief Medical Examiner in Philadelphia, testified that to a reasonable degree of scientific certainty that the cause of Gordon's death was a gunshot wound that entered the back and exited the upper chest, and that the manner of death was homicide. *Id.* at 82, 88–92, 95.

Lamback also testified that he was involved in criminal acts with Johnson and Cassel the next day. On that date, Johnson and Cassel picked Lamback up in Johnson's Lincoln Town Car in West Philadelphia. The three planned to go to North Philadelphia to the Norman Blumberg Apartments ("Blumberg Apartments"), located at 24th Street and Jefferson Street in Philadelphia,

5

to find pills. Johnson and Cassel were armed with the same firearms as the night before. Johnson parked outside of the high-rise apartments and all three defendants, as well as an unidentified male who had offered to help them find pills in the area, got out of the car. After trying to locate someone with pills on an upper floor of the high-rise and finding the hallway full of people, Johnson told the group they were leaving. Back down in the lobby, the group ran into another male who stated, "It looks like you are not from down here. You all need to get out of here." N.T. 5/8/18 at 91, 93–98.

At that point, Lamback left with the male who offered that he knew another place to get pills. Johnson and Cassel remained. While standing outside the high-rise apartments, Lamback heard gunshots. After seeing a police vehicle outside the building with its doors open, Lamback left the area of the Blumberg Apartments on foot. *Id.* at 98–99, 100, 102.

On January 27, 2014, at approximately 2:45 a.m., as Derek Fernandes was exiting the elevators to the lobby of the high-rise tower in the Blumberg Apartments when he observed two males he had never seen before.. One male pulled out a silver semi-automatic gun, pointed it in Fernandes' face, stated, "Don't move," and then grabbed twenty dollars out of Fernandes' hand. The gunman told the second male to check the pockets of another person in the lobby. After taking Fernandes' cash, the gunman checked Fernandes' pockets and then the two males backed out of the building, with the gunman stating, "Don't follow me or I'm going to shoot you". N.T. 5/9/18 at 135–136, 139–142.

Fernandes ran to the doors separating the lobby from the courtyard and was able to see the two males running towards Jefferson Street. When Fernandes exited the door to the building, someone shot at him once or twice. He observed Housing Police in the courtyard and alerted them to the robbery, at which point the officers followed the males down Jefferson Street towards 24th Street. Later, Fernandes was taken to the hospital, where he identified Johnson as the man that

6

robbed him. Fernandes also identified Johnson as the gunman at the preliminary hearing.[6] *Id.* at 142–144, 146, 151.

Just before 3:00 am, Philadelphia Housing Authority Officers Thomas Vetri and Jonathan Brodie were working in the Blumberg Apartment Complex inside a marked police wagon. The pair parked their vehicle in the courtyard outside of the two high-rise buildings. A gunshot rang out and both officers exited the vehicle, as Johnson and another male walked out of the courtyard towards Jefferson Street. Officer Vetri and Officer Brodie told both males to stop and identified themselves as police officers. Both males fled the area together, leading the officers on a foot chase for several blocks. The officers lost sight of both males until they observed Johnson running down 25th Street and turning onto Stewart Street, when Johnson headed into a partially fenced in lot. *Id.* at 277–279, 283–287.

At approximately the same time, FBI Agent Scott Baber, while working in the area of the Blumberg Apartments, heard a radio call for shots fired. The shooter was described as a black male wearing a silver colored jacket and dark pants, carrying a silver firearm. Agent Baber drove towards the Apartments and observed the defendant, Jerome Johnson, matching the description, running down Jefferson Street towards his vehicle, carrying a firearm in his right hand. Agent Baber put his unmarked vehicle in reverse and activated the emergency lights, as he informed radio that he had seen an individual matching the call's description. N.T. 5/8/18 at 7–8, 11–13, 28.

As Johnson ran, Agent Baber pursued in his vehicle, following Johnson until he turned into a vacant lot on the south side of Stewart Street, just east of Jefferson Street. Agent Baber pulled his vehicle partially into the lot and heard voices stating, "Stop. Police." when he observed Officers Brodie and Vetri, to his left and his right also chasing the suspect. Johnson ran to the back

---

[6] During trial, Fernandes identified Cassel as the gunman. N.T. 5/9/18 at 137.

of the lot, which was closed off by a high fence. Agent Baber exited his vehicle and announced himself as a member of the FBI. Johnson remained facing the fence at the back of the lot, while Officer Brodie commanded the defendant to show his hands and drop his weapon. All three law enforcement officers drew their weapons and pointed them as Johnson, standing with his hands obscured fifteen feet away, failed to comply with the commands. *Id.* at 14–20.

Johnson then turned around to face Agent Baber with a silver firearm in his right hand pointed down at the ground. As Agent Baber stepped back to find cover, the Defendant raised his firearm and pointed it directly at Agent Baber and Officers Vetri and Brodie. In response, Agent Baber and the other uniformed officers fired several rounds each at Johnson. After Agent Baber's first shot, Johnson fell down to his knees with the firearm still in his hand. The officers continued to fire and Johnson fell face first into the snow covered lot. Johnson was promptly taken to Temple Hospital. N.T. 5/8/18 at 21–22, 290; N.T. 5/9/18 at 6.

Officer Frederick Straub responded to the hospital to guard Johnson as a suspect. Officer Straub took Johnson's clothing as evidence and recovered from inside a front left pant packet a twenty dollar bill. Johnson was wearing a black Armani Exchange bubble jacket that was later photographed and identified by Marquise Kemp. Also recovered from inside Johnson's pants pocket was a set of car keys labelled for a Lincoln 2000. Crime Scene Officers responded to the scene and a single projectile was recovered from inside the lobby of the high-rise building and one FCC was recovered from the ground near the Town Car in the courtyard. The Lincoln Town Car was kept as evidence and a Crime Scene Officer later recovered a bullet from inside the roof. N.T. 5/9/18 at 6, 8, 25, 40–44.

Officer Ronald Weitman, an expert in firearms examination, testified that of the FCCs recovered from the 2900 block of Ridge Avenue, two were fired from the same forty caliber firearm and three were fired from the same nine millimeter firearm. The single projectile

8

recovered by Crime Scene inside the roof of the Lincoln Town Car was determined to be either a forty caliber or ten millimeter. Officer Weitman also testified that the FCC recovered from the courtyard of the Blumberg Apartments was a .380 and the projectile was either a .380 or a nine millimeter. Due to insufficient markings, Officer Weitman was unable to compare the FCC to the firearm recovered from the Defendant. *Id.* at 185, 191–193, 209–210.

The Commonwealth and defense entered into several stipulations: 1) that a search warrant was executed on the 2000 Lincoln Town Car found parked outside of Blumberg Apartments and that recovered from inside the glove box was ownership paperwork in the name of Jerome Johnson dated 1/24/14; 2) that neither of the defendants had a license to carry a firearm in Pennsylvania; 3) that DNA swabs taken from the driver side door of the Lincoln Town Car were consistent with a mixture that included Johnson as a contributor; 4) that DNA swabs taken from two bottles on the front passenger side floor were consistent with a mixture that included Johnson and Cassel as contributors; and 5) that DNA swabs taken from the rear driver's side and rear passenger's side were consistent with a mixture that included Lamback as a contributor. *Id.* at 213–217.

### Discussion

The Defendant raised one issue on direct appeal: whether there was sufficient evidence to sustain the verdict. The Defendant claims that the evidence was insufficient to sustain his convictions on each charge. Evidence is sufficient to sustain a conviction when, viewed in the light most favorable to the Commonwealth as verdict winner, the evidence and all reasonable inferences drawn therefrom support the jury's finding of all the elements of an offense beyond a reasonable doubt. *Commonwealth v. Mattison*, 82 A.3d 386, 392 (Pa. 2013) (*citing Commonwealth v. Montalvo*, 956 A.2d 926, 932 (Pa. 2008)). In applying this standard, Pennsylvania courts acknowledge that "the Commonwealth may sustain its burden by means of

9

wholly circumstantial evidence." *Montalvo*, 956 A.2d at 932 (*citing Commonwealth v. Diggs*, 949 A.2d 873, 877 (Pa. 2008)). The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence, as any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so inconclusive that, as a matter of law, no probability of guilt may be drawn. *Commonwealth v. Devine*, 26 A.3d 1139, 1145 (Pa. Super. 2011) (*quoting Commonwealth v. Jones*, 874 A.2d 108, 120–121 (Pa. Super. 2005)). The fact-finder is free to believe all, part, or none of the evidence. *Id.*

A defendant commits Second-Degree Murder when he or an accomplice kills another human being during the course of committing a felony. 18 Pa. C.S. §§ 2501, 2502(b), (d). To sustain a conviction for Second-Degree Murder, the Commonwealth must prove that: (1) a human being was unlawfully killed; (2) the defendant or an accomplice, while partners in a crime, committed the act that caused the killing; (3) the defendant or an accomplice committed the act in furtherance of that crime, and (4) that the defendant acted with malice. *Id.* A jury may find proof of malice where the crime the defendants were partners in was inherently dangerous to human life. *Commonwealth v. Lambert*, 795 A.2d 1023 (Pa. Super. 2002).

To sustain a conviction for Conspiracy to Commit Robbery, the Commonwealth must establish that the Defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and (3) an overt act was done in furtherance of the conspiracy. *Commonwealth v. McCall*, 911 A.2d 992, 996 (Pa. Super. 2006) (*citing Commonwealth v. Hennigan*, 753 A.2d 245, 253 (Pa. Super. 2000)). An explicit or formal agreement to commit crimes can seldom, if ever, be proved, but a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation.

10

*Commonwealth v. Perez*, 931 A.2d 703, 708–709 (Pa. Super. 2007); *Commonwealth v. Jones*, 874 A.2d 108, 121–122 (Pa. Super. 2005).

The Superior Court has identified four factors to be considered in determining the sufficiency of the evidence supporting the existence of a conspiracy: "(1) an association between alleged conspirators; (2) knowledge of the commission of the crime; (3) presence at the scene of the crime; and (4) in some situations, participation in the object of the conspiracy." *Commonwealth v. Lambert*, 795 A.2d 1010, 1016 (Pa. Super. 2002).

To sustain a Robbery conviction, the Commonwealth must prove that, in the course of committing a theft, the defendant either inflicted serious bodily injury upon another, committed any felony of the first or second degree, or physically removed property of another by force. 18 Pa.C.S. § 3701(a)(1)(i)–(v). A defendant acts "in the course of committing a theft" when the act occurs during (1) an attempt to commit theft; (2) the commission of theft; or (3) flight after the attempt or commission. 18 Pa.C.S. § 3701(a)(2); *Commonwealth v. Alford*, 880 A.2d 666, 677 (Pa. Super. 2005). "It is immaterial that the intent to kill preceded the intent to rob since the force resulting in death is the force used to accomplish the robbery." *Commonwealth v. Butcher*, 304 A.2d 150, 153 (Pa. 1973); *see also Commonwealth v. Ford*, 650 A.2d 433, 438 (Pa. 1994) (the factfinder could reasonably conclude that the force used to commit the robbery was the force used to commit the murder.) A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof. 18 Pa.C.S. § 3921(a).

To sustain a conviction for VUFA 6108, the Commonwealth must prove beyond a reasonable doubt that the Defendant carried a firearm at any time upon the public street or upon public property in the city of Philadelphia and that he was not licensed to carry a firearm or

11

exempt from licensing. *Commonwealth v. Mendozajr*, 71 A.3d 1023, 1026 (Pa. Super. 2012); 18 Pa.C.S. § 6108. To secure a PIC conviction, the Commonwealth must prove that the Defendant possessed an instrument of crime with the intent to employ it criminally. 18 Pa.C.S. § 907(a). An instrument of crime is "[a]nything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have." 18 Pa.C.S. § 907(d)(2); *see also Commonwealth v. Robertson*, 874 A.2d 1200, 1208–1209. (Pa. Super. 2005).

The evidence clearly established that on January 26, 2014, Johnson, Cassel, and Lamback drove to North Philadelphia with the intent of robbing a drug dealer. Johnson and Cassel brought guns. Johnson immediately asked Kemp if he had any drugs, before pulling out his gun and pointing it at Kemp. Cassel boxed Kemp in while Lamback stood at the door as a lookout. While trying to flee from the robbery and confronted by Kyleaf Gordon, Cassel pulled out his firearm and shot at Gordon, ultimately shooting him in the back as he ran away. Both Johnson and Cassel were unlicensed to carry a firearm. All three defendants received proceeds from the robbery.

The Defendant asserts that he acted alone in self-defense and that Johnson acted alone in the robbery. This claim necessarily rests on the premise that the Commonwealth's evidence did not prove the Defendant's involvement in the robbery and the conspiracy to commit robbery. However, the Commonwealth presented ample evidence proving that each defendant was involved in the robbery and conspiracy. Johnson, Cassel, and Lamback left their own neighborhood with guns to rob drug dealers. They drove together to an area of the city where they were unfamiliar. All three exited the Lincoln Town Car and entered the Chinese Store, surrounded Kemp and prevented his escape while surveying for law enforcement or other potential threats to their enterprise. After the money, drugs, phone, and jacket were confiscated from Kemp at gunpoint, all three left the store together and returned to Johnson's vehicle. After shots were exchanged and all three returned back to West Philadelphia together, the proceeds were divided equally among the

12

perpetrators. The evidence is more than sufficient to establish all three defendants were guilty of Robbery and Conspiracy to Commit Robbery.

Johnson, Cassel, and Lamback were therefore conspirators, or partners, at the time they were leaving the Chinese Store and encountered Gordon. The Defendant fired his weapon at Gordon in an attempt for all three to successfully flee from the scene of the robbery in Johnson's vehicle, an act that furthered the robbery and the conspiracy. Since the defendants were involved in a crime that by its nature risks the safety of others, the jury could infer malice. Gordon suffered a fatal gunshot wound as a result of the Defendant's actions. The evidence is therefore sufficient to sustain a verdict of Second-Degree Murder.

The jurors dismissed the claims that the Defendant acted in self-defense. Self-defense, which the Defendant argues justified his actions, is defined as the use of force upon another person when the actor believes that such force is immediately necessary for the purpose of protecting himself against unlawful force. 18 Pa.C.S. § 505(a). The use of a deadly force is limited by § 505(b)(2), under the circumstances where " the actor believed such force is necessary to protect himself against death or serious bodily injury." 18 Pa.C.S. § 505(b)(2). Deadly force is defined as, "force which, under the circumstances in which it is used, is readily capable of causing death or serious bodily injury." 18 Pa.C.S. § 501.

Under the law, the Commonwealth must prove beyond reasonable doubt that a killing was not committed in self-defense. *Commonwealth v. Mouzon*, 53 A.3d 527 (Pa. 2012). It succeeds in the task if it's evidence shows that the defendant provoked or continued in the difficulty that resulted in the killing, the defendant's belief that he was in danger of death or serious bodily injury

13

was unreasonable, or that the defendant could have retreated in complete safety. *Id.* at 532. As the defendants here provoked the use of force against them by robbing Kemp at gunpoint, self-defense was inapplicable.

There was likewise sufficient evidence to sustain the verdicts on VUFA 6108 and PIC. The Commonwealth presented ample evidence through Kemp's testimony, Lamback's testimony and video evidence, that the Defendant carried a forty caliber firearm, did not possess a license to carry that firearm, and used that weapon to commit criminal acts, including Robbery and Second-Degree Murder.

For the foregoing reasons, this Court's judgment of sentence should be affirmed.

BY THE COURT,

Barbara A. McDermott, J.

14